Hitchcock, J.
The first question presented to the court for consideration is on a motion made by complainant, similar to the one made in the court of common pleas, to strike from the files the amended and supplemental answer, setting up the statute of limitations and of fraud.
Section 114 of the practice act (Swan’s Stat. 684) provides, *442 “ That when any cause is reserved by appeaL to the Supreme Court, the appeal shall be tried on the pleadings made up in the court of common pleas, unless for good cause shown ; and on payment of costs, the court should permit either or both parties to alter their pleadings;” and the same rules apply in chancery as at law. Now this is not a motion by either party to change or alter their own pleadings. It is a motion by one of the parties to change the pleadings of his antagonist, by striking from the record, or, which is the same thing, from the files, a portion of those pleadings. This can not be done, except under extraordinary circumstances. Whether the court of common pleas exorcised a sound discretion in allowing this answer to be filed, it is impossible for us to know, from anything disclosed in the case. Had that court been of the opinion that the indulgence given to the defendant to file an amended and supplemental answer, had been *absurd, the motion to strike that answer from the files would unquestionably have been sustained. In the case of Sheets v. Baldwin’s Adm’rs, this court held that the statute of limitations is not to be favored, and that a defendant in default will not bo permitted to plead it, unless under peculiar .circumstances. 12 Ohio, 120. But by the representation made to the court of common pleas, to obtain leave to file this answer, that tribunal may have been satisfied in this case, that peculiar circumstances existed to justify a departure from the general rule.
It is possible the court may have been influenced by the facts disclosed in the case, from the evidence then on file; evidence from which it appears that the complainant, although he charges that this claim was assigned to him in 1840, did not in fact become fully entitled to it until on the day the bill was filed, and from which it further appears that the pretended contract between Eorsyth and Horner, although mado in July, 1836, when the land in dispute was supposed to be worth some sixty-two or sixty-three dollars per acre, was not executed by Forsyth until the January tollowing, when the same land had dejmeciated in value from thirty-five to fifty per cent., and which is not worth now to exceed ten or fifteen dollars per acre. And when executed, it was not done by deed delivered personally to Horner, but by deed transmitted to him by mail to New York. And from which evidence it further appears that Forsyth is still indebted to E. Corning & Go., of which firm Horner is a partner, in a sum of some f 1,200 orüpl,500, *443 an amount far greater than the value of the land; and that from this liability, Forsyth is discharged under the bankrupt law. These circumstances might have had some influence with the court. Whether they had or not, it is impossible for us to know. But we do know that the defendant was allowed to file this answer, and the court in which it was filed, refused to strike it from the files. It is now before this court as a part of the record, and we shall not, for any reason hitherto urged, change that record.
*Much testimony has been taken in the case to settle the controverted fact set up in the bill, and denies in the answer, whether there was an absolute sale of the land in controversy by Forsyth to Horner. And it is a point in the case, which has been fully examined by counsel, it being ds strenuously urged, on the one side, that there was an absolute sale, as it is on the other that the conveyance was intended merely as collateral security for a debt due from Forsyth to E. Corning & Co. Upon this point the court have not been able fully to concur in opinion.
But admitting that the sale was absolute, and for the consideration mentioned in the bill, is the complainant entitled to a decree? As a defense, the defendant sets up the statutes of limitations, both of the States of New York and of Ohio. Courts of chancery regard such statutes as much as courts of law; for if they do not, still a claim which would be barred at law, must, if prosecuted in chancery, be governed by the same rule. The bare circumstance that it is prosecuted in chancery, can not take it out of the statute. Now there can be no doubt but that this claim might have been prosecuted at law. What is it? Merely a demand for the purchase money for land sold. A proper subject for the jurisdiction of a court of law, and of which a court of chancery can not take jurisdiction, unless it is upon the ground that the complainant is the assignee of a chose in action, which is not negotiable. Perhaps, however, it may be thought a court of equity might take the jurisdiction on the ground that one object of the bill is to enforce the vendor’s lien. According to our views of the law, and according to the decisions of this court, this lien can not be transferred by the act of the vendor, so as to vest the right to enforce it in his assignee. It was so held in the case of Jackman v. Hal-lock, 1 Ohio, 318, and has beon so hold at the present term.
The complainant, then, might have had his action at law in the name of his assignor, for his use. This would have been his ap *444, 445 propriate remedy. But in such case, the statute of -Nimitations might have been pleaded in bar. By commencing his suit in chancery, he can gain no advantage in this respect. If his demand is barred at law, it must be in chancery.
Now what are the facts ? The deed of conveyance from Forsyth to Ilorner, although it bears date in July, 1856, was not acknowledged until January 7, 1837, and recorded on the 28th of the same month. . Between these two dates, if all was fair in the transaction, it must have been delivered to Samuel H. Young, who transmitted it to Ilorner early in March of the same year — Horner then being a residont of Albany, in the State of New York. The contract for the sale, if any existed, was made in the State of New York. It is so stated in the bill, and so proved by the testimony-The complainant claims seven per cent, interest, on the ground that the payment was to be made in the State of New York. There was no specific agreement as to the time in which payment was to be made. From these circumstances, we have come to the conclusion, that Horner was liable to pay, upon the delivery of the deed, and when the deed was delivered, a right of action accrued to Forsyth. This delivery took plac^in January, 1837, although probably Horner did not receive the doed until some time in the month of March following. The bill in this case was filed on April 1, 1843. In what manner notice'was given does not appear. It probably must have been by publication, as Horner is not a resident of the state. Let this be as it may, six years had transpired from the time the cause of aetion accrued before the bill was filed. But it is said'that, within that time, there was an acknowledgment of the existence of the debt. We do not so understand the testimony. Again it is said that the defendant is a resident of the State of New York, and not within the State of Ohio, so that our statute could not begin to run. This debt was contracted in the State of New York; it was to be paid there; the debtor has always resided there. By the statute of that state, which is set up in the answer, the claim is barred. And our statute of limitations ^provides 'that where a contract is barred by the law of the state where it was made, the statute of such sister state may be set up as a bar here.
Upon a full consideration of the case, we are of opinion that tho case is with the defendant, and the bill must be dismissed.