[*December Term*, 1872.]

M. S. COMBS *v.* CHARLES T. WATSON AND EMILY WATSON, HIS WIFE, AND EDWARD GRIEVE.

Under amended section 17 of the insolvent debtors' act, passed February 12, 1863 (S. & S. 397), lands conveyed for the purpose of hindering, delaying and defrauding creditors, inure, in contemplation of law, to the equal benefit of all creditors; and any prior creditor, a simple-contract as well as judgment creditor, may, if the fraudulent grantor be in fact insolvent and have no property subject to execution, institute and maintain an action to set aside such conveyance, and then have the proceeds of such lands applied to the payment of debts, as provided in said amended section, the same as if such lands had been assigned for the benefit of creditors.

An action can not be maintained to set aside such conveyance, and subject the lands conveyed by it, by any creditor who was such at the time of the conveyance, after the lapse of *four* years from the discovery of the fraud, the limitation being prescribed by section 15 of the statute of limitations. 2 S. & C. 949; S. & S. 541. And any creditor instituting an action after such period, must aver in his petition that he discovered the fraud within such period of four years.

If the fraudulent grantee be the debtor's wife, and the land be purchased

with the debtor's means from a third party, to whom notes are given for the purchase money, some of which are paid by the debtor before, and some within such period of four years, suit may be maintained to the extent of the latter within four years after payment, as they constitute a fraudulent gift of so much of the land by the debtor to his wife.

*Collins & Herron*, for demurrer.

*Jacob Schroeder*, contra.

YAPLE, J.    This action was brought on the 12th day of November, 1872, to subject certain real estate, deeded in fee to Emily Watson by Edward Grieve and wife, on September 25, 1865, to the payment of the creditors of Charles T. Watson, for the reason that he furnished the means to pay for the same, and caused the deed to be made to his wife to hinder, delay, and defraud such creditors, and for which purpose she accepted the conveyance.

The petition avers, among other things, that, on the 1st day of November, 1860, Charles T. Watson, at Nashville, Tennessee, made his promissory note, payable to the plaintiff eighteen months after date, for $750, with interest, which became due in May, 1862; that in April, 1862, Watson being the owner of a house and lot in Nashville, without consideration, and with intent to defraud his creditors, conveyed the same to one Henderson, his brother-in-law, who afterward sold the property for a large sum of money, which he paid over to Watson; that Watson, on the 25th of September, 1865, purchased the premises sought to be subjected to creditors by this action for the sum of $4,000, of which he paid in cash $3,000, and gave his three notes, drawing interest and secured by mortgage, to Grieve for the balance—one for $500, payable in one year; one for $250, payable in two years, and the other for $250, payable in three years after date; all of which notes Watson has paid Grieve, the last note having become due September 28, 1868; that in June, 1872, he obtained a judgment in this court against Watson, on the note made at Nashville,

for $1,275.50, and for $6.75 costs, which is still in full force and wholly unpaid; that on the 26th day of July, 1872, he caused an execution to be duly issued and levied on the real estate he seeks by this action to subject to the payment of Watson's creditors; that Watson then was and still is wholly insolvent, etc.; and that Grieve has not yet canceled the mortgage given to him upon the premises, though fully paid, and he asks that he may be ordered to do so. He also asks that the deed to the wife be declared void, because made and received to defraud Watson's creditors, and that the lands be subjected to pay them, according to law, and for other proper relief, etc.

To this petition Emily Watson demurs, because it does not state facts sufficient to constitute a cause of action against her. The *gist* of the demurrer is, that the action was not brought within *four* years after the commission of the alleged fraud by her, it not being claimed that such alleged fraud was not known to the plaintiff from the time thereof.

This case directly presents the question, within what time must an action be commenced by creditors to set aside conveyances of real estate, made to hinder, delay, or defraud them, so as not to be subject to the bar of our statute of limitations? Before the code, such actions were of equitable cognizance, and not subject to the *statute* of limitations, which related only to actions at law, but were governed by the rules and usages of courts of chancery, in which remedies for fraud never became stale until the lapse of a certain length of time after its discovery, or after it might have been discovered by reasonable diligence.

The doctrine upon this subject is fully and clearly stated in *Badger* v. *Badger*, 2 Wal. 92–96.

In New York, a statute of limitations has been passed, which provides (sec. 91 [71] pt. 6), "Within six years," ("after the cause of action shall have accrued" — sec. 74 [67]) "an action for relief on the ground of fraud, in cases which heretofore were solely cognizable by the court

of chancery; the cause of action in such cases not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

In *Gates* v. *Andrews*, 37 N. Y. 657, it is expressly held, that this provision of the statute is the one which governs the limitation of actions to set aside fraudulent conveyances. But the case also decides that no right of action accrues to the creditor until he obtains a judgment, and issues and has returned an execution, and that the statute does not begin to run against him till such time.

*Eyre* v. *Beebe*, 28 How. N. Y. Pr. 333, is to the same effect. It seems that such cases are not deemed actions to recover the title or possession of real estate; they are actions not to *recover*, but to *destroy* apparent title, on the ground that such title is *void* because of fraud.

Independently of a statute authorizing it, no action can be maintained by a creditor to set aside a conveyance of real estate, made to defraud creditors, until he has reduced his claim to judgment, and has had an execution issued thereon and returned, unsatisfied in whole or in part (which is the law in New York); and by filing his bill, he obtains a prior lien upon the lands he seeks to subject.

In Ohio, by the "act regulating the mode of administering assignments in trust for the benefit of creditors," passed April 6, 1859, it was provided (sec. 17, 1 S. & C. 713): "All transfers, conveyances, or assignments, made with the intent to hinder, delay, or defraud creditors, shall inure to the equal benefit of all creditors, in proportion to the amounts of their respective claims; and the probate judge, *after* any such transfer, conveyance, or assignment shall have been declared by a court of competent jurisdiction to have been made with the intent aforesaid, on the application of *any* creditor, shall appoint an assignee, according to the provisions of this act," etc. And under this section, in *Stanton* v. *Keyes*, 14 Ohio St. 443, it was held that no creditor could acquire a lien by filing his creditor's bill,

and that the statute applied to conveyances made before its passage as well as afterward; but that section did not enact that *any* creditor might maintain such an action, though *any* creditor might have an assignee appointed by the probate judge, after such conveyance had been duly adjudged to have been made with such fraudulent intent. Then the property became *assets* assigned by operation of law for the equal benefit of all creditors. Subsequent creditors, who could not institute the action, were enabled to apply for the appointment of an assignee, because, after such property became assets, subsequent creditors were always let in to share them; so, under this section, it is doubtful if any but a judgment creditor could properly *bring* such an action.

On February 12, 1863, this section was amended. S. & S. 397. It provides that "all transfers, conveyances, or assignments, made with intent to hinder, delay, or defraud creditors, shall be declared *void* at the suit of *any* creditor," etc.; and the probate judge, on the application of *any* creditor, may appoint an assignee, etc. In all such suits, publication is required to admit of all creditors who wish to join in the prosecution of the suit, coming in and sharing proceeds and expenses equally with the creditor bringing suit, etc.

The law, then, as it now stands, will permit any creditor, simple-contract as well as judgment, to institute and maintain such actions; and he can only get his equal portion of the proceeds of the property with other creditors. And if he will not publish, so as to give others an opportunity to join in the action, they may go to the probate judge, after judgment is rendered, or into the court rendering the judgment, have an assignee appointed, and obtain their portions of the net proceeds of such action. *Jamison* v. *McNally*, 21 Ohio St. 295; *Heman & Co.* v. *Schoenfeld et al.*, 2 Sup. Ct. Rep. 440.

Such conveyances are mere assignments for the equal

benefit of all creditors; and any creditor may institute an action to enforce and secure the equal rights of all, if the fraudulent grantor be in fact insolvent, having no property subject to execution.

Our statute of limitations (sec. 15, 1 S. & C. 949; S. & S. 541) provides: "Within *four* years," ("after the cause of action shall have accrued") "an action for *relief* on the ground of fraud. The cause of action in such cases shall not be deemed to have accrued until the discovery of the fraud."

While not so specific as the New York code, I take it that this clause is designed to cover the same class of cases as is provided for by that statute; and it therefore follows that this case is governed by this clause of section 15 of our statute of limitations; and the alleged fraud of the wife, Emily Watson, was committed more than *four* years before suit brought, that is, September 25, 1865, the suit not having been brought until November 12, 1872; and the last note for the purchase money paid became due, and is presumed to have been then paid, September 28, 1868. Had any part of the purchase money been paid by Watson *within* the four years, that could have been reached in the land by the plaintiff in this action; for she would have received a gift of such amount from her indebted husband, which they put in this real estate for her.

The demurrer is sustained.