Shohl, P. J.
This case was heard on appeal. The original action was brought by Katherine Knecht Huwe against her brother, Victor E. Knecht, and Emma S. Knecht, his wife, to set aside a conveyance alleged to have been made in fraud of her rights as a creditor.
The father of plaintiff and her defendant brother died in 1905, leaving a substantial estate, consisting among other things of stock in the Victor Knecht Company, a foundry located in Cincinnati. In 1906, defendant, Victor E. Knecht, purchased of his sister her 39 shares in the Victor Knecht Company. There was a payment of $1,000 May 21, 1906, and a series of notes, $3,500 being dated June 19, 1906, and $7,200 dated November 17, 1906. With his other stock this gave Victor E. Knecht the controlling interest in the company, of which he was president and general manager. Under his operation the business was interrupted by strikes, and, according to his testimony, after the year 1907 it got worse and worse.
Defendant went security for one of his brothers and was called upon to pay a note of $11,500, on. which he was an endorser. To obtain this money, application was made to the Western German Bank, and on April 16, 1909, he mortgaged to the bank his interest in the real estate inherited from his father, joining with his brothers, who did likewise, to secure a loan of $11,500, and hypothecating at .the same time his 124 shares of stock of the Victor Knecht Company, which were his total holdings exclusive of the 39 shares which the plaintiff held as collateral to her notes. In addition to the above, he was also indebted to the bank in the sum *489 of $4,600. On the same day the Victor Knecht Company executed a mortgage on certain of its real estate to secure an indebtedness then existing amounting to $16,000. At the time of the mortgage, above referred' to, defendant, Emma S. Knecht, signed a waiver of her dower rights, and defendants both testified that it was agreed between them at that time that she would be given the home in consideration of her releasing dower.
On June 19, 1909, the first of plaintiff’s notes, in the sum of $1,500, fell due. The evidence shows that plaintiff was demanding payment at the time, and her brother, the defendant, professed his inability to pay it. On June 29, ten days thereafter, he conveyed the home to his wife. This is the property involved in this action.
It is contended that the transfer to the wife constituted a gift, or rather a partial gift; that Knecht was not possessed of sufficient means to meet his existing obligations and that as against the plaintiff, an existing creditor, the transaction was voidable and should be set aside. The evidence shows that defendant was largely indebted, and owed according to his own testimony $11,500 to the Western German Bank, as joint maker on a note; he owed the further sum of $4,600 to the bank; he owed the plaintiff $10,700, and his sister-in-law, Mrs. Peter Knecht, about $300, making a total of $27,100. His assets consisted of the shares of stock of the Knecht Company, all of which were hypothecated; a one-sixth interest in his father’s real estate, the whole of which he testified was worth $30,000, but which sold in partition for less *490 than $22,000, the value of his interest therefore being, somewhere between $3,500 and $5,000; he also owned a two-thirds interest in a farm, his interest •being valued at $2,000. His only other asset beside1 the property now in suit was the stock in the Victor Knecht Company. On the witness stand he stated that in his opinion it was valuable, being worth in the neighborhood of $300 a share. The evidence does not warrant us in adopting his opinion. All the evidence in the case shows the business had been going backward for several years. It could hardly be classed as a going concern. It was not doing business, nor attempting to do any, with intermittent exceptions. It had paid no dividends since 1906. It was unable to pay its notes as they matured, and was finally required by the bank to mortgage its real estate to secure its obligations there'. Defendant claimed to be entitled to a salary of $3,000 a year, but only drew $30 or $35 a week, stating on the witness stand that he could not draw more as ‘he did not wish to drain the business. He was only able to pay the interest to Mrs. Huwe in small installments, because the condition of the business would not permit him to draw any more money from it. After giving full weight to all the evidence, facts and circumstances of the case, the court has reached the conclusion that the stock was not worth anything’like $300 a share; it could not be sold in the market. It was certainly not worth its par value in 1909. The circumstances show that long before the receivership of July 17, 1913, the company was unable to meet its obligations as they matured. • •
*491 We conclude that defendant, Victor E. Knecht, did not have sufficient assets to permit him to make a gift. As was stated in Crumbaugh et al. v. Kugler et al., 2 Ohio St., 373:
“A person largely indebted can not give away his property without amply providing for the payment of his debts. The suspicion of a fraudulent intention in making such gift may, in many such cases, be removed by proper evidence, but the question always remains whether the conveyance operated to the prejudice of creditors.
“Such a gift is never upheld unless property is retained, clearly and beyond doubt, sufficient to pay all the donor’s debts.”
See also Brice v. Myers et al., 5 Ohio, 121; Miller et al. v. Wilson et al., 15 Ohio, 108; Oliver v. Moore et al., 23 Ohio St., 473; Evans et al. v. Lewis, 30 Ohio St., 11, and Walston v. McCabe et al., 11 N. P., N. S., 26.
It is claimed, however, that Mrs. Knecht gave consideration for the transfer by releasing her dower in the property covered by the mortgage to the Western German Bank, and the case of Singree v. Welch and Wife, 32 Ohio St., 320, was cited. In that case, for property that was worth $500, the wife relinquished dower in land located in Illinois in which the value of her dower right was estimated at $230. In the case at bar, the evidence shows that the property was worth over $5,400, and the value of defendant’s contingent dower in her husband’s share of the estate of his father, even' if the entire property was worth what defendant .claimed, calculated on the mortality tables, *492 would amount to $279. In the case of Singree v. Welch, the court says, at page 324:
“For the purpose of this case it may be conceded, that if the wife claimed and received for her rights in her husband’s estate, an amount so entirely dis-proportioned to its value, as to be altogether unreasonable, and shocking to the moral sense, she might be held, as in the nature of a trustee for her husband’s creditors.”
The disproportion in the case at bar is altogether unreasonable, so that while there was a semblance of consideration, or of partial consideration, there was a very substantial partial gift out of the estate that should have been used to pay the husband’s creditors. Part consideration is not inconsistent with the doctrine of Crumbaugh v. Kugler, 2 Ohio St., 373, 378, nor with the rule in Oliver v. Moore et al., 23 Ohio St., 473, 481.
'Defendants call to the attention of the court the case of Lytle et al. v. Baldinger et al., 84 Ohio St., 1. In a situation in which the doctrine of that case is applicable, this court will follow the rule laid down by the supreme court until that tribunal should make a further decision in respect to the statute therein referred to. The syllabus, however, refers only to transactions in violation of Section 6343, Revised Statutes, now Sections 11104 and 11105, General Code. The act of which these original sections were a part is in the chapter on Insolvent Debtors. There are other provisions of the code upon which plaintiff relies. Without passing upon her contention that she has further rights at common law, Section 8618, General Code, provides:
*493 “Every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to defraud creditors of their just and lawful 'debts or damages, or to defraud or to deceive the person or persons purchasing such lands, tenements, hereditaments, rents, goods or chattels, shall be utterly void and of no effect.”
That section is the modern successor to the Statute of Elizabeth referred to in the case of Brice v. Myers et al., 5 Ohio, 121, where the court says, at page 123:
“To enforce these principles, to prevent creditors from suffering by their violation, was the object of the statute of the 13 Eliz. c. 5, and is the object of that part of the second section of our statute for the prevention of frauds and perjuries, which relates to creditors. As to the relief of creditors these statutes are co-extensive; each makes void conveyances made with ‘intent’ to defraud creditors; they are declarative only of the common law, which, as now understood, would, without the statutes, have effected all that can be effected with them. The statute of Eliz., as to the relief of creditors, has, from its enactment, in courts both of law and equity, uniformly received a most liberal construction, notwithstanding it subjects the committers of the forbidden fraud to a prosecution for a penalty.”
If a man who is largely indebted transfers all of his unencumbered property to his wife, thereby providing a home in which he can live, and thus defeating the rights of his existing creditors, the *494 transfer is constructively fraudulent and void under Section 8618, General Code, even though no actual fraud was intended. See Crumbaugh v. Kugler, supra, at page 378. To hold that the transferee must have knowledge of the fraudulent intent in such a case, where no fraudulent intent is necessary, involves a confusion of thought.
Section 11105, General Code, does not by its terms apply to Section 8618, but only to 11104, the section immediately preceding it. We will not extend the doctrine of Lytle v. Baldinger, supra, to make it cover sections other than the one to which it specifically refers. It will take clear statutory language to warrant a court in imposing upon a creditor seeking relief the obligation to show that the wife had guilty knowledge. In the case at bar the wife admitted on the witness stand that she knew of his obligations and that she did not know what assets he had to meet them. In view of our conclusions of law, hereinbefore stated, it becomes unnecessary to determine whether such knowledge put her on inquiry sufficiently to charge her with bad faith. Unless otherwise barred, plaintiff would be entitled to set aside the transfer.
It appears that on April 21, 1915, the defendant, Victor E. Knecht, was adjudicated a bankrupt. In the schedules in the bankruptcy case plaintiff was listed as a creditor on $10,700 worth of notes. On December 27, 1915, the bankrupt was discharged, and during the hearing of this cause in this court defendant by leave filed a supplemental answer setting, up the facts in connection with the bankruptcy case as a defense to this action. To this defense plaintiff made several contentions.
*495 In Remington on Bankruptcy (2 ed.), § 1591, the rule is stated as follows:
“Fraudulent transfer, suits instituted before four months. Suits to set aside fraudulent transfers instituted more than four months preceding bankruptcy may not be enjoined, nor may the property be ordered turned over to the trustee in bankruptcy.” (Citing Pickens v. Roy, 187 U. S., 177; Natl. Bank of Republic v. Hobbs, 118 Fed. Rep., 626, and In re Kavanaugh, 99 Fed. Rep., 928.)
The most important decisions involved in a determination of the question are Metcalf v. Barker, 187 U. S., 165, and Pickens v. Roy, Id., 177. In each of these cases the action was by a judgment creditor. They establish that when a judgment creditor files his bill in equity more than four months prior to the bankruptcy of the defendant, thereby obtaining a lien on specific assets, and diligently prosecutes it to a final judgment, he acquires a lien on the property of the bankrupt, which is superior to the title of the trustee in bankruptcy. The lien created by a judgment creditor’s bill is contingent in the sense that it is subject to being defeated if the suit is unsuccessful, but it is inchoate and becomes a specific charge or lien upon its successful termination. This lien, if it arises more than four months prior to the petition in bankruptcy, is respected in bankruptcy, and the discharge of the debtor, being a personal defense, does not release the rights of the lienholder in the property. The rule is based upon the recognition and enforcement of pre-existing liens not arising within four months of the petition in bankruptcy. *496 See 2 Loveland on Bankruptcy, § 749, and Collier on Bankruptcy (11 ed.), 402, 403. When a judgment is obtained, the judgment creditor has a lien upon the lands of the judgment debtor in the county in which the judgment is rendered. (Section 11656, General Code.) If a debtor has attempted to convey away the land in fraud of his-creditors, it equitably remains his, and when the fraud is determined and the transfer set aside it is regarded as affected by the lien which would have attached by operation of the statute if the property had never been transferred. Plaintiff contends that a strict lien is not necessary, but further urges that creditors’ suits and like actions create a lien sufficient for the purposes of such an action, citing 25 Cyc., 1457, and 20 Cyc., 826. They are as follows:
25 Cyc., 1457-C. “Creditors’ suits and like actions. A lien is acquired by the filing of a strict creditor’s bill to subject property not reachable by execution at law, or by the filing of a bill by a creditor to set aside a fraudulent conveyance by his debtor.”
20 Cyc., 826. “A creditor who during .the life of his debtor brings a suit to set aside as fraudulent a conveyance or transfer made by such debtor acquires a lien on the property covered by such conveyance or transfer, and becomes entitled to the payment of his claim in preference to other creditors, unless it is otherwise provided by statute.”
An examination of all the cases cited in the notes to the foregoing leads us to the conclusion *497 that while the weight of authority supports the text, many of the decisions are founded upon the construction of local statutes. Judgment liens in Ohio are purely of statutory creation. (Stanton, Sheldon & Co. v. Keyes et al., 14 Ohio St., 443, 446.) We are not convinced that the bringing of such an action by a creditor, other than a judgment creditor, creates a lien in Ohio.
It appears in this case, however, that on the same day on which this original action was filed, to-wit, June 14, 1912, suit was brought on $5,700 of the notes which formed the basis of this action. That case proceeded to a determination, and on March 3, 1913, a part of the notes on which this suit was based ripened into a judgment for $5,700 and costs. It appears, therefore, that the plaintiff herein is armed with a judgment and was a judgment creditor more than four months prior to the bankruptcy proceedings. Her rights, therefore, should be no less than those of the original plaintiffs in Metcalf v. Barker and Pickens v. Roy, supra. See also Flint v. Chaloupka, 78 Neb., 594; Blick v. Nimmo, 121 Md., 139; Stevenson v. Bird, 168 Ala., 422, and Board of Directors v. Lowrance, 43 Amer. B. R., 31 (South Carolina, 1919). The last-named decisions show the application of the doctrine. Relief was granted to plaintiffs setting aside fraudulent conveyances, although bankruptcy supervened.
The plaintiff is entitled to a decree. The court, however, will grant relief on terms. It appears that Mrs. Knecht relinquished dower worth $279, according to calculations based on figures given by *498 her husband. If the transfer is to be set aside the decree.will be conditioned upon the securing to her of that amount. In view of the fact that the defendants have had the occupancy of the premises in question during the controversy, no interest will be allowed on that sum. The right of Emma S.'Knecht to contingent dower in the premises in controversy will be left as it was prior to the transfer by Victor E. Knecht, which will be ordered set aside in accordance with the above. A decree may be presented accordingly.

Decree accordingly.

Hamilton and Cushing, JJ., concur.