PROSE ET AL. v. BEARDSLEY ET AL.

*Insolvent debtors—Conveyance in contemplation of insolvency
—Section 11104, General Code—Insolvency exists, and acts
in contemplation thereof, when—Federal Bankruptcy test of
insolvency inapplicable, when—Proof of intent to defraud
unnecessary to avoid conveyance, when.*

1. The test of insolvency fixed by the Federal Bankruptcy Act
   of 1898 has no application to a proceeding brought to en-
   force the provisions of Section 11104, General Code of
   Ohio.
2. Under Section 11104, General Code, insolvency exists when
   a person is unable to pay his debts according to the ordi-
   nary usages of trade, and an act is in contemplation of
   insolvency if at the time of its performance the debtor
   realized that either at that time or in the early future his
   financial condition was or would be so deranged that he
   would be unable to pay his debts as they became due.
3. A conveyance made in contemplation of insolvency with a
   design to prefer one or more creditors is avoided by Sec-
   tion 11104, General Code, without proof of any intent to
   defraud.

(Decided March 6, 1924.)

APPEAL: Court of Appeals for Gallia county.

*Mr. R. M. Switzer* and *Mr. F. E. Cherrington,*
for plaintiffs.
*Mr. H. W. Cherrington,* for defendants.

MAUCK, J.    The plaintiffs as creditors of Harry
E. Beardsley brought this action to set aside a
deed made by the debtor on November 30, 1920,
to his wife Anna W. Beardsley. The plaintiffs
were mostly subsequent creditors, their claims
arising immediately after the date mentioned, but

a part of the claim of the Plymale-Wagner Company had accrued at that date. The situation was somewhat complicated by the fact that about thirty days after the execution of the deed the grantor became violently insane, and in the following April his wife was appointed his guardian. No question is made of the capacity of the grantor up to the last of December, 1920, when he was adjudged insane. Much of the testimony goes to the administration of Mrs. Beardsley's guardianship, which would be relevant and important if fraud were a necessary element of the case, but is irrelevant in the view hereafter expressed of the law and the facts.

The petition of the plaintiffs charges that the sale was made by Beardsley while insolvent, and in collusion with Mrs. Beardsley, to hinder, delay and defraud creditors. This is denied by the defendants.

The case has been heard partly upon these issues and partly on issues not specifically made in the pleadings.

The plaintiffs now assert a right to set aside the deed in question on two grounds. First, it is claimed that the deed is invalid under the rule laid down in Section 8617, General Code, which reads as follows:

"All deeds of gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making them, shall be void and of no effect."

The plaintiffs' rights in this respect are dependent solely on whether the deed in fact created a trust for the use of the grantor, regardless of the intent of the parties and regardless of the

solvency of the grantor when the deed was executed. Regardless of the state of the pleadings we find that the statute quoted has no reference to fraudulent conveyances, as that term is generally used, but to a prohibition of deeds of the kind mentioned as being against public policy. Section 8617 is a part of the Statute of Frauds of this state and was a part of the English statute of the same character, enacted in the reign of Henry VII.

"It is not directed against trusts made with fraudulent intent, but against trusts themselves. * * * Its mere existence avoids the transfer and destroys the title as against creditors existing or subsequent. A conveyance by the owner of property to another, in trust for himself, is, in effect, a conveyance to himself, and such a measure can never be necessary for any legal or honest purpose." Bump on Fraudulent Conveyances (4th ed.), Section 191.

The author further points out that the object of the statute is to render such purely nominal transfers of title ineffectual where the use and control of the property are left in him who makes such transfer. The statute has no application to the case at bar. The deed from Beardsley to his wife conveyed not only the legal title, but all the title, legal and equitable. The contract contemporaneously made gave Beardsley no equitable rights in the property, but only a personal right to re-acquire the legal and equitable title upon payment of $5,500. The plaintiffs, under the testimony in this case, have no rights under the provisions of Section 8617, General Code.

If the facts warranted us in finding that this

deed from husband to wife was based on no consideration, and was what the texts call a voluntary conveyance, the conveyance would be set aside for reasons not necessary to be here discussed. We proceed on the theory that the conveyance was for a valuable consideration.

Many cases have been cited that arose when the statutory provisions were different from those now obtaining. Formerly, preferences were lawful, though made in contemplation of insolvency, unless coupled with a trust for the benefit of others than the grantee or assignee.

The validity of this deed turns on the applicability to the facts of Section 11104, General Code. By the terms of the first part of that section, as it now reads, a conveyance in trust or otherwise by a debtor, in contemplation of insolvency and with a design to prefer one or more creditors, is made void. The pertinent provisions of that section read as follows:

"A sale, conveyance, transfer * * * made in trust or otherwise, by a debtor * * * in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others * * * shall be void * * * *."

The statute further makes void a "conveyance * * * made * * * in any manner, with intent to hinder, delay or defraud creditors."

It seems that the petition in this case was drawn on the supposition that the facts brought the case within the latter provision of the statute, rather than the first quoted provision. With this we do not agree. A conveyance made with intent to defraud creditors is one thing, and a conveyance to

prefer creditors is another. The first imports moral turpitude, the other is only a recently prohibited act. (*Van Iderstine, Trustee*, v. *National Discount Co.*, 227 U. S., 575.) A pleading charging the former does not warrant a decree on the latter ground. (*Fifth Third Natl. Bank* v. *Johnson*, 219 Fed., 89.) The plaintiffs, however, were not aware until trial of the indebtedness claimed to subsist between Beardsley and his wife. They had no means of ascertaining it, and will now be permitted to amend, setting up unlawful preference as a ground for setting aside the deed in controversy.

The defendants Harry E. Beardsley and Anna W. Beardsley were husband and wife on November 30, 1920, when he deeded to her what is known in the record as the Home Farm, of the value of $5,500. The expressed consideration was nominal. Contemporary with the deed a contract was entered into by the parties, by the terms of which both parties undertook to relieve the other's estate of all dower or distributive interest. The instrument bears much likeness to an agreement of separation, although separation did not follow. The wife agreed to assume $2,000 of a $2,900 mortgage on the property. This mortgage also covered the Edler farm, hereafter mentioned. Neither the deed nor the contemporaneous agreement recited any existing indebtedness. Both parties testify, however, that one consideration for the deed was a note for $1,200, given in 1907 or 1908, $500 owed, but unevidenced by note, and $1,150 owed by Beardsley to his wife's mother, Henrietta Wood, which last-mentioned indebtedness was assumed by

Mrs. Beardsley. The grantor testifies that these notes were delivered to him when the deed was executed, but Mrs. Wood shows that she had possession of the note for some time thereafter. The conveyance was in fact then a deed in trust so far as Mrs. Wood was concerned, who after the surrender of the note had an equitable right against Mrs. Beardsley. But this trust feature has no real significance, as we view the statute. Assuming as we do that Beardsley owed his wife and Mrs. Wood, as claimed by them, the deed unquestionably operated as a preference to them as against other creditors, and the Plymale-Wagner Company was an existing creditor for a small amount. The real question is whether the deed was made in contemplation of insolvency. The question that has been argued is whether Beardsley was in fact solvent on November 30, 1920, and the test applied in argument has been whether his assets at a fair valuation at that time equalled his liabilities.

The defendants' position is erroneous in two respects. In the first place, a balance between assets and liabilities is not the common-law test of solvency. It is the rule created by the Bankruptcy Act of 1898. In the earlier federal bankruptcy acts, and elsewhere, in the absence of statute, insolvency exists when a person is unable to pay his debts according to the ordinary usages of trade. (*Mitchell* v. *Gazzam*, 12 Ohio, 315, 336; 14 Ruling Case Law, 628; Bouvier's Law Dictionary.) As pointed out in an editorial note to *Plymouth Cordage Co.* v. *Smith*, (18 Okla., 249), 11 Ann. Cases, 449, one might be solvent so far as

the national bankruptcy act is concerned and insolvent under the state law. It will be readily observed that the phrase relating to insolvency in Section 11104 long antedates the definition of solvency made by the bankruptcy act, as the term appeared in the legislation of this state at least eighty years ago. The definition of the term in the bankruptcy act, therefore, has no application to the Ohio statute.

The further error in the attitude of the defendants is the assumption that the deed must be sustained if Beardsley was solvent when it was made. Such is not the statute. It does not denounce a deed made by an insolvent, but one made in contemplation of insolvency. This phrase "in contemplation of insolvency" was early employed in the statutes of New York, where some difference of opinion arose as to its meaning. It was finally definitely determined that an act was in contemplation of insolvency if it were performed because either existing or anticipated insolvency were in the mind of the performer. (*Robinson, Recr.,* v. *Bank of Attica,* 21 N. Y., 406; *Paulding, Trustee,* v. *Chrome Steel Co.,* 94 N. Y., 334.) The Ohio Supreme Court, in the *Mitchell case, supra,* after holding that insolvency applies to a person whose affairs have become so deranged that he is unable to pay his debts as they fall due, continues (page 336):

"And if, from such a deranged state of his affairs, and the sense of inability to meet his moneyed engagements, he should transfer his property to a trustee to pay his debts, we should regard such assignment as made in contemplation

of insolvency, and within the meaning of the stat-
ute.''

The law in other respects has been changed, but
the phrase, ''in contemplation of insolvency,'' has
endured; and it means now, as it meant then, that
one was in contemplation of insolvency when he
realized that either at the time or in the early
future his deranged financial condition was or
would be such that he would be unable to pay his
debts as they became due.

What was the financial condition of Beards-
ley November 30, 1920? His liabilities were as
follows:

| | |
|---|---:|
| Anna W. Beardsley | $1,700 |
| Mrs. Wood | 1,150 |
| Buckeye B. & L. Co. | 1,700 |
| Bank mortgage | 2,900 |
| Mossbarger | 180 |
| Andrew | 100 |
| Stewart | 200 |
| Edler | 100 |
| Plymale-Wagner | 60 |
| | |
| Total | $8,090 |

To this should be added $340, the amount, in
addition to the Plymale-Wagner account of $60,
which was in process of going into the improve-
ments of the Stewart farm, and thereby going to
give that place a value of $2,200, thus raising the
liabilities to $8,430. In addition to this he owed
taxes and interest, and likely a $35 note at the
bank, as Mrs. Beardsley afterward paid such a
note, and this, in the absence of a definite show-
ing by the defendants, may be reasonably assumed
to amount to $300 more, to be further increased

if interest is calculated on the $500 obligation asserted by Mrs. Beardsley. A fair estimate of the liabilities, including those in process of accumulation, approaches $9,000. He owned:

| | |
|---|---:|
| The home farm, worth | $5,500 |
| The Edler farm, selling at | 475 |
| The Stewart farm, sold at | 2,200 |
| Personal property netting about | 500 |
| | |
| Total | $8,675 |

It may be said that these figures are unfair; that his assets ought to be measured by the opinions of those who have testified to higher values, rather than by the price brought at subsequent sale. *Fictio cedit veritati.* An eminent writer has thus expressed it:

"If insolvency therefore takes place shortly after the making of the conveyance, that is enough. Solvency is generally to be judged of by the event. If the debtor continues embarrassed, and becoming more and more involved, ends in total and acknowledged insolvency, this is sufficient evidence of his insolvency as to the existing creditors whose debts remain unpaid. The only exception to this rule is where a man is perfectly solvent at the time of the transfer, and is afterward rendered insolvent through some unexpected loss, or something which could not have been reasonably reckoned on at the time of the conveyance." Bump on Fraudulent Conveyance (4 ed.), Section 254, page 294.

It is to be observed, too, that the foregoing enumeration of the assets and liabilities takes no account of the rights of the debtor to exemptions from execution, and the costs incident to realizing

on these assets. Solvency, says the Supreme Court of Missouri, quoting from other eminent courts, "implies as well the present ability of the debtor to pay out of his estate all of his debts, as also such attitude of his property as that it may be reached and subjected by process of law, without his consent, to the payment of such debts." *Mitchell* v. *Bradstreet*, 116 Mo., 226, 240, 20 L. R. A., 138, 142.

It is claimed, of course, that unexpected losses accrued because values in realty shrank after 1920. The evidence does not show the extent of the shrinkage, nor when it ensued. All these lands were covered with mortgage. Beardsley had only possible equities therein. He could not pick his time to sell. He could not count on realizing above the incumbrances any sum of money at any time to meet his indebtedness as it fell due, and it would be an injustice to so value these equities as to create an appearance of solvency when we know that it is an appearance only, to the end that other creditors be charged with that risk of falling values which Mrs. Beardsley was not willing to take.

The record shows no substantial losses of personal property with the exception of a $300 loss on the St. Albans garage, and that did not affect the situation, for at the same time Mr. Beardsley lost that $300 he borrowed $500 more of Mr. Kerr.

It is our conclusion that this case constitutes no exception to the just rule that solvency will be judged by the event. Beardsley's affairs were so disordered on November 30, 1920, taking into consideration all his property, all his debts, and the debts in process of accumulation, that both

he and Mrs. Beardsley contemplated his probable inability to meet his obligations as they matured. There was no other reason for making the deed, and the very unusual contract that accompanied it. Indeed, the fact almost speaks for itself. The indebtedness to his wife and mother-in-law was long past due. His wife at least wanted her money, and Beardsley could not pay it. Moreover, in December, and probably earlier, he was neglecting his large agricultural interests, involving himself in other enterprises that resulted unfortunately, and we are forced to the conclusion that the perils of the new enterprises in his clearly crippled condition contributed to the wife's anxiety to secure the payment or security of her claims, and that she, perhaps more clearly than he, saw the rocks ahead.

The parties are husband and wife. Outside the knowledge that would be imputed to her because of that relationship she shows by testimony an intimate knowledge of his affairs. He is contracting additional liabilities, represented in part by the claims of the plaintiffs herein. He is a farmer and has more land than he can cultivate, and yet is engaging in trading and other businesses alien to agriculture. He doubtless hopes to thus rehabilitate his fortunes, but it is only a hope. It is not sufficiently promising to command his wife's confidence. All of his real estate is incumbered. He and his wife, for some reason wholly unexplained and unalluded to in the record, have this deed made, covering the only asset he has of any considerable value. They do not disclose to their attorney the fact that he is largely indebted to his wife and her mother. No ref-

erence is made to it in the deed. In the contract, contemporaneously made, they make no recital of this indebtedness, but assert that the consideration for the transfer is the surrender each of the parties makes in the property of the other. His business activities off the farm continue and result disastrously. One at least of the plaintiffs, and other existing creditors, and all the subsequent creditors, are prejudiced by the preference thus bestowed on the wife. In our judgment it was a preference made in contemplation of insolvency, and the intent was common to both parties.

The prayer of the plaintiffs will be granted upon the petition being amended in accordance with the suggestions herein.

*Decree accordingly.*

MIDDLETON, P. J., and SAYRE, J., concur.