THE UNITED STATES CAN CO. *v.* FREIBERG.

(Decided January 7, 1929.)

*Messrs. Pogue, Hoffheimer & Pogue,* for plaintiff in error.

*Messrs. Maxwell & Ramsey* and *Mr. Murray Seasongood,* for defendant in error.

MAUCK, J. The United States Can Company was incorporated under the laws of Ohio in 1916. In

1927 it had outstanding 62,500 shares of common stock of no par value and 20,000 shares of preferred of $100 par value. It also had outstanding a mortgage bond issue of $1,200,000. In December, 1927, negotiations were had between the president of the United States Company and representatives of the Continental Can Company, Inc., looking to a merger of the two companies. On January 21, 1928, an agreement for the practical union of the two was entered into, and on February 6, 1928, deeds and bills of sale were made by which all the property of the United States Company was transferred to the Continental, in return for a block of stock of the Continental, and the assumption by the latter of the debts of the United States Company, and the Continental Can Company, without interruption, proceeded to carry on business in the same property and with the same facilities that had been theretofore employed by the United States Company. On the same January 21, 1928, the stockholders of the United States Company voted to dissolve that corporation and appointed three directors as liquidating trustees, and gave notice to the preferred stockholders that the holdings of the latter would be taken up by the liquidating representatives paying therefor par plus accrued dividends. On February 6, 1928, the plaintiff, a holder of preferred stock, acting for himself and for all similarly situated, filed his petition in the common pleas to enjoin the consummation of the arrangement unless or until the preferred stock was redeemed at the price of $115 per share, plus accrued dividends. Issue was joined, and trial had in the common pleas, resulting

in a decree for the plaintiff. This proceeding is to reverse that judgment.

The sole question is whether the preferred stockholders are entitled to have their stock redeemed at $115 per share, or whether they shall receive $100 per share therefor. The contract fixing the rights of the holders of the preferred stock, as expressed in the stock certificates, was as follows:

"In case of insolvency or dissolution of the corporation, the holders of the preferred stock shall be paid the full par value of their stock and the unpaid dividends accrued thereon before any payment is made to holders of common stock, and no more.

"The preferred stock shall not carry the right to vote except in case two or more quarterly dividends be in default of payment, in which case it shall have the same voting rights as the common stock. The preferred stock is redeemable at the option of this company at any time after January 1, 1919, at $115 per share and accrued dividends."

The dividends on the preferred stock were regularly paid, so the holders of that stock never came into voting power. It will be observed that the first paragraph of the quotation is a mere recital of the statutory limitation, and that the second paragraph constitutes the contract between the corporation and the stockholders, so far as this case is concerned.

It is argued by the plaintiff in error that the statutory limitation referred to is decisive hereof. That Section, 8671 General Code, reads as follows: "On the insolvency or dissolution of the corporation, the holders of preferred stock shall be entitled to receive from the assets remaining after paying its liabilities, the full payment of its par value, before anything is paid to the common stock."

The claim is urged that, whenever and however dissolution is accomplished, the statute provides for a payment of the preferred stockholders at par and no more, and that, as dissolution has been voted, and the company is now in process of dissolution, the rights of the preferred stockholders are clearly defined by the statute quoted.

The history of the section in question is interesting. Prior to 1902 the statutory provisions for preferred stock of Ohio corporations were meager. On May 12 of that year the General Assembly enacted what is now Section 8671, and related sections, General Code (95 Ohio Laws, 622), through the medium of House Bill No. 738, amending and supplementing what was then Section 3235, Revised Statutes, and also amending Section 3236, Revised Statutes. That act provided, Section 3235a, Revised Statutes, for the redemption of preferred stock at not less than par at a price to be expressed in the certificate. In the same section it provided that, in case of the insolvency of the corporation, the preferred stockholders of the corporation should not be liable for the corporation's debts until the liability of the holders of the common stock was exhausted, and, further, in the same section it provided, as is now provided in Section 8671, General Code, for the payment at par of the preferred stock on "the insolvency or dissolution of the corporation." The word "dissolution" is thus associated with the word "insolvency," and the latter word is twice used in the same section. We, of course, realize that in the case at bar it is not claimed that insolvency existed, nor that any rights are dependent upon that term. It may be, however, that an understanding of the term "insolvency"

will assist in understanding the associated term "dissolution." The definition of insolvency, as an excess of liabilities over assets, as fixed by the bankruptcy laws of the United States, is manifestly not a correct definition of the term as used in the statute under consideration. If that were the meaning of the term, its use in this section would be wholly ineffective, for, if there were insufficient assets to meet liabilities, there could be no assets to pay any part of either the common or preferred stock. The term here, as generally used in the Ohio statutes, means an inability on the part of the debtor to meet his obligations according to the ordinary usages of trade. The authorities are cited in *Prose* v. *Beardsley,* 18 Ohio App., 211, 216.

Now, of course, it was not contemplated that a mere failure by the corporation to meet its bills in the course of trade should *ipso facto* affect the value of the preferred stock, for it would always be in the power of the common stockholders to arbitrarily cause such failure. What was meant was that, when such insolvency had been found by the judgment of a court to exist, and the court was required to take possession of the corporate property and distribute the same, then the court should give to the preferred stockholders the par value of their stock, and no more, to the end that they might be made whole, but that they should not profit by the winding up of the corporation. The statute in question, then, so far as insolvency is concerned, could apply only to a corporation that had failed to meet its obligations, and had passed into the hands of a court empowered and required to distribute its net assets between the two classes of stockholders, thus terminating forever the activities of the corporation.

When House Bill 738, *supra,* was introduced in the General Assembly, the term "dissolution" had a very restricted meaning, because at that time the only dissolutions of an operating corporation known to the law were by actions in *quo warranto* and by civil proceedings under Section 5651 *et seq.,* Revised Statutes (now 11938, General Code). There was an extra-judicial dissolution provided for in Section 5674, Revised Statutes (now 8738, General Code), but that section never applied to a corporation having assets to be distributed. If we were to derive the legislative intent from the language of the act when the legislation was drafted, we would at once conclude that the Legislature meant, in using the terms "insolvency" and "dissolution," to refer to cases where the corporations were in the custody of the courts. It happened, however, before House Bill 738 was enacted on May 12, 1902, the Legislature provided an additional method of dissolution by the Act of April 18, 1902 (95 Ohio Laws, 208), now Section 8740, General Code, which provides for the dissolution of a corporation under the conditions therein set forth.

From all this it follows that Section 8671, General Code, providing for the payment of preferred stockholders at par "on the insolvency or dissolution of the corporation," means such an insolvency as has placed the corporation *in custodia legis,* or such a dissolution as has been had in court by proceedings to dissolve, or (by virtue of the amendment of April 18, 1902) a legal dissolution pursuant to Section 8740, General Code.

Was Section 8740, General Code, then available to these stockholders desiring to dissolve the United

States Can Company? Conceding that the voting power was wholly in the common stock, assuming that the common stock owners might lawfully so exercise that voting power as to enrich themselves, without regard for the rights of the preferred shareholders, whose property was confided to the voting power of the common stock, and that common stockholders owed no duty whatever to the holders of the preferred, let us see what they could do under the statute referred to. The directors could call a meeting of the stockholders to consider dissolution when and if—and only when and if—the corporation had "completely closed its business." No such condition prevailed in the United States Can Company in January when the meeting was called for the attempted dissolution in question. On the contrary, the business was actively conducted up to February 6, long after this suit was brought. Moreover, the corporation must have paid all "debts and liabilities incurred by it." This, of course, had not been done. The vital conditions necessary for a dissolution under Section 8740, General Code, were wholly lacking. The directors had no power to call a meeting for that purpose, and the stockholders had no power to act. The resolution of dissolution was unauthorized by statute, and was invalid except for such authority as may be found in the General Corporation Act of Ohio, passed in 1927 (112 Ohio Laws, 9). Whether the United States Can Company was in position to effect a voluntary dissolution under Section 79 of the new corporation act (Section 8623-79, General Code), is not under trial, and cannot here be decided. There seems to be no doubt of the power of the General Assembly to provide for

the dissolution of a corporation at any time and under any conditions that it may see fit to fix. Such power is expressly reserved to the Legislature by the Constitution. There is, however, no power in the Legislature to alter an existing contract between the corporation and another, or between different classes of stockholders with each other. What then was the contract?

The company secured the money of the preferred stockholders under an agreement to pay them dividends at the rate of 7 per cent, payable quarterly. This was a somewhat speculative rate, and indicated of itself that the investment was not an ultraconservative one. The purchaser was led to believe, however, that, if the business grew into solidity, the stock would continue to draw dividends, even though the corporation might get cheaper money, and that the company would reward the confidence of its preferred holders by continuing to pay them 7 per cent, until such time as its enhanced credit would make it possible and desirable to retire that stock, in which case it would pay $115 for it. This contract was modified by the statutory provisions embodied in the certificate, to the effect that, if insolvency or dissolution ensued, the preferred holders should be paid but par. When the stock was issued, the corporation had no power to compel the surrender of the preferred stock at less than $115, unless the corporation became insolvent, or unless the judgment of a court established the necessity of its dissolution, or unless it had completed its business and discharged all its liabilities. Clearly it was not contemplated that, as long as the corporation was functioning, the common stockholders could freeze

out the preferred and pay them at par. Certainly, if subsequent legislation is invoked to give an added power to the corporation to call in that stock at par, such legislation would have the effect of impairing a contract.

Other interesting questions have been met in this case which we feel under no necessity of discussing. The merger of the two interested corporations is an accomplished fact. The omelet cannot be unscrambled. A study of the contract, and the precedent negotiations lead to the view that the equitable effect of the transfer of the physical property of the United States Company to the Continental Company, in consideration of the Continental's delivery of a block of common stock, was to invest the United States Company with the title to that stock, and that it had no power to deliver that stock to the common stockholders of the United States Company. The present relations of the two companies and their various stockholders, and the stipulations made in the present case, render it unnecessary to go into that phase of the case. Neither is it incumbent upon us to determine what, if any, fiduciary duty was owed by the common stockholders to the holders of the preferred stock, nor the effect of the peculiar side agreement, by which the Continental Company agreed to pay half of the premium of $300,000 to the preferred stockholders, if it were found that those stockholders were entitled to the premium claimed by them.

Because the legal dissolution of the United States Company could not be had at the time it was attempted under the old law, and because a dissolution under the new law cannot be employed so as to im-

pair the contractual rights of the preferred stock-holders, the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

ALLREAD, P. J., and KUNKLE, J., concur.

Judge MAUCK, of the Fourth Appellate District, and Judges ALLREAD and KUNKLE, of the Second Appellate District, sitting in place of Judges HAMILTON, CUSHING and Ross, of the First Appellate District.