THE CITY TRUST & SAVINGS BANK, APPELLANT, *v.*
WEAVER ET AL., APPELLEES.

(No. 2638—Decided January 26, 1941.)

*Messrs. McKain, Ohl & Swanner,* for appellant.
*Mr. David Shermer,* for appellees.

NICHOLS, P. J.  This is an appeal on questions of

law and fact from the judgment of the Common Pleas Court of Mahoning county.

On August 31, 1938, plaintiff, appellant herein, The City Trust & Savings Bank, Youngstown, Ohio, brought its action against Caroline C. Weaver and Mildred M. Weaver, defendants, appellees herein, alleging in its petition that on or about May 14, 1926, Caroline C. Weaver and Harry E. Weaver, since deceased, became indebted to the bank in the sum of $14,652 upon their promissory note, a copy of which is set forth in the petition; that the balance remaining due and unpaid on the note is $14,652 with seven per cent interest from March 29, 1937; that on June 28, 1937, the bank instituted an action in the Common Pleas Court to recover judgment against the makers of the note and to foreclose a mortgage given to secure the bank on Youngstown city lot No. 7242, known and referred to in this proceeding as the ''Market street property''; that such action is still pending; that on the 6th day of April 1938, Harry E. Weaver died; and that no administration of his estate has been undertaken and his estate is insolvent.

Plaintiff's petition further alleged that on or about July 21, 1938, Caroline C. Weaver attempted to transfer to her daughter, Mildred M. Weaver, another specifically described tract of real estate in Mahoning county, being the middle 50 feet of Youngstown city lot No. 13781, known as the ''Fairgreen avenue property,'' the instrument of conveyance being recorded in the deed records of that county; that at the time of the purported conveyance Caroline C. Weaver was either insolvent or in danger of insolvency, all of which was known to, or by the exercise of reasonable diligence, should have been known to Mildred M. Weaver; and that the purported transfer was without consideration and for the purpose of hindering and delaying plaintiff from collection of the amount due on the promissory note referred to, thereby working a

fraud upon plaintiff, all within the knowledge of Mildred M. Weaver.

The petition further alleged that to date plaintiff has not secured judgment in the action begun by it June 28, 1937, on its note and mortgage for the reason that Caroline C. Weaver filed an answer in that action for the purpose of hindering and delaying plaintiff in securing judgment so that she could convey the Fairgreen avenue property to her daughter and thereby place the same beyond the reach of plaintiff.

The petition prayed that the conveyance to the daughter be set aside and held for naught, that the property be subjected to the payment of plaintiff's claim, and that liens be marshalled.

By separate answers of the defendants, they admit that Caroline C. Weaver and her husband, Harry E. Weaver, now deceased, became indebted to plaintiff on the promissory note set up in the petition, and that on July 21, 1938, after the death of Harry E. Weaver, a deed to the Fairgreen avenue property was executed and delivered by Caroline C. Weaver to her daughter, which deed is duly recorded. Defendants deny each and every other allegation in the petition.

It is further alleged in the answers of the defendants, in substance, that Caroline C. Weaver, after the death of her husband, was ill and desired to make disposition in her lifetime of her real estate other than that encumbered to plaintiff, and after conference with her two children she deeded the Fairgreen avenue property to her daughter who lived with her in this property, "as a gift founded on a good and valuable consideration of love and affection and made with a *bona fide* intent, she at the time believing and, therefore, avers that the real estate on Market street was very valuable and that the plaintiff, The City Trust & Savings Bank, was amply secured thereby and that she would receive a substantial disbursement from the proceeds of said sale."

The cause was submitted to this court on the pleadings, the transcript of the evidence taken in the lower court, and certain stipulations of counsel, from which it is found that the note referred to in the petition was executed May 14, 1926, and was secured by mortgage on the Market street property; that on July 21, 1938, the date of the deed sought to be set aside in this proceeding, this Market street property was listed for taxation purposes at $19,720; that this property was subsequently appraised at $21,000, in the foreclosure action then pending; that the plaintiff bid in this property at $14,000 at the sale subsequently had in the foreclosure proceeding; that the amount found due plaintiff on its note, together with delinquent taxes on the mortgaged property, was $18,918.63; and that the entire amount due plaintiff on its note, plus taxes, was $2,081.37 less than the appraised value of the property, but by reason of the plaintiff having bid in the property at two-thirds the appraised value, to wit, $14,000, a deficiency judgment was thereafter entered against Mrs. Weaver for approximately $4,900.

The evidence discloses that on the Market street lot was a brick business block, so called, and an older building on the rear of the lot; that the rents from this property, prior to the depression, amounted to about $420 a month, and also, prior to the depression, the owner had been offered $75,000 for the property; and that in the year 1934 the bank instituted an earlier action for judgment on its note and foreclosure of its mortgage, such action being dismissed by plaintiff without prejudice, when the owner and her husband executed to plaintiff an assignment of the rentals due and to become due from the present and future tenants of the mortgaged premises and placed the mortgagee in possession of the premises, from which it appears that as late as September 17, 1934, plaintiff was satisfied with the Market street property and its rentals as security for its note. There is no evidence in the rec-

ord indicating that plaintiff, before the transfer herein sought to be set aside, had made any demand on the owner for additional security for its note, and there is no evidence in the record indicating that plaintiff, before the transfer herein sought to be set aside, had made any demand on the owner for additional security by way of lien on the Fairgreen avenue property, which Mrs. Weaver had owned for many years previously, although the rents on the mortgaged premises had dropped to about $150 per month. The reason for this failure to demand additional security seems apparent in that the rents at $1,800 per year were sufficient to pay interest on its note at 7 per cent per annum and leave a balance of approximately $800 each year for taxes, insurance and repairs.

Mrs. Weaver had purchased the Fairgreen avenue property for $17,000 prior to the execution of plaintiff's note and mortgage on the Market street property. The Fairgreen avenue property was occupied by Mr. and Mrs. Weaver and their daughter, Mildred, as their home. This property was encumbered by a mortgage to another Youngstown bank, the amount owing thereon at the date of the transfer to the daughter being $3,960. The daughter, Mildred, has made the payments on this mortgage at the rate of $55 per month ever since the transfer. This property is listed for taxation at $8,400. Mrs. Weaver testified, in substance, that she was of the opinion the Market street property would sell, even at forced sale, for $40,000 to $50,000, leaving her a sufficient balance, after payment of the mortgage, for her to live; and that she was ill and desired before her death to make some provision for the daughter, Mildred, and after conference with her son made the transfer to the daughter with no thought of hindering or delaying plaintiff in the collection of its debt, or of defrauding anyone.

The record further discloses that on the date of the transfer in question Mrs. Weaver was indebted to

plaintiff upon a separate cognovit note, on which there was due as of August 1, 1938, the sum of $535. The mother and daughter were also indebted to plaintiff upon another cognovit note, but the mother was subsequently released and her son substituted as comaker with Mildred on this note, so that it appears to have no bearing upon the decision in this case, except that it appears that as to this last-mentioned note the plaintiff has not been prejudiced by the transfer. These notes were apparently executed in satisfaction of judgments rendered in 1934 in favor of plaintiff against Mrs. Weaver and the daughter, Mildred, and as part of the transaction culminating in the assignment of rents and the placing of plaintiff in possession of the Market street property. The cognovit note still owing by Mrs. Weaver appears to be unsecured, although the record is quite hazy as to this transaction, of which no mention is made in plaintiff's petition, but of which cognizance is taken according to the best understanding we can have from the evidence in determining whether the conveyance in question should be set aside.

Section 8618, General Code, provides in part:

"Every gift, grant, or conveyance of lands, * * * made or obtained with intent to defraud creditors of their just and lawful debts * * * shall be utterly void and of no effect."

Section 11104, General Code, provides in part:

"A sale, conveyance, transfer, mortgage or assignment, made in trust or otherwise, by a debtor * * * in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage or assignment made * * * with intent to hinder, delay or defraud creditors, shall be void as to creditors of such debtor, or debtors at the suit of any creditor or creditors."

Section 11105, General Code, provides that Section 11104 shall not apply unless the person to whom such

sale, conveyance, transfer, or assignment is made knew of such fraudulent intent on the part of the debtor.

It is the conclusion of this court from our consideration of all the evidence that such evidence is not sufficient to show by the preponderating weight thereof that the daughter, Mildred, knew of any fraudulent intent, if any there was, on the part of the mother in making the transfer here sought to be set aside, and hence it follows that no further consideration need be given to Section 11104, General Code. The transfer was made upon both good and valuable consideration—the good consideration consisting of the natural love and affection of the mother for her daughter, and the laudable desire to provide for the daughter's future; the valuable consideration consisting of the payment by the daughter of that part of the debt of the grantor which the grantee has been liquidating at the rate of $55 per month out of her personal earnings.

Section 8617, General Code, has no application under the evidence in this case. The deed here sought to be set aside was not made in trust for the *exclusive* use of the person making the same, nor was any beneficial interest in the property reserved to the grantor. The fact that the grantor has continued to reside in the property with the grantee has not been shown to be the result of any previous agreement or arrangement between the parties, or otherwise than by the sufferance or desire of the grantee, the mother retaining nothing by the conveyance.

The further question remains as to whether the conveyance from the mother to the daughter was made or obtained with intent to defraud creditors of their just and lawful debts and was, by reason thereof void and of no effect under Section 8618, General Code. Knowledge of the grantee of such intent upon the part of the grantor is not an essential prerequisite under this section invalidating gifts to defraud creditors. Of course, if actual knowledge of such intent is had by the grantee

no difficulty would be encountered in granting the relief authorized by the section.

Plaintiff contends that the transfer in question is presumptively fraudulent and that actual intent to defraud is not required to be shown; that to the extent the conveyance is found to work a fraud upon a creditor or creditors, to that extent is fraud presumed to have been intended. Cases cited and relied upon by plaintiff are: *Prose* v. *Beardsley,* 18 Ohio App., 211; *Friedel, Admx.,* v. *Wolfle,* 41 Ohio App., 564, 180 N. E., 738; *Huwe* v. *Knecht,* 10 Ohio App., 487; *Ursak* v. *Sivanick,* 56 Ohio App., 434, 10 N. E. (2d), 1017; *Jamison* v. *McNally,* 21 Ohio St., 295; *Mitchell* v. *Gazzam,* 12 Ohio, 315; *Rogers* v. *Marchant,* 91 F. (2d), 660; *Cincinnati Equipment Co.* v. *Degnan,* 184 F., 834, 840 (certiorari denied, *Cincinnati Equipment Co.* v. *Degnan,* 220 U. S., 623, 55 L. Ed., 614, 31 S. Ct., 724).

In considering the proposition contended for by plaintiff it must be kept in mind that no creditor other than plaintiff is seeking to set aside the conveyance in question, and that the proposition advanced is based upon the assumption that plaintiff has in fact been defrauded, whereas that is the issue under the pleadings and evidence.

The case of *Prose* v. *Beardsley, supra,* was brought pursuant to the provisions of Section 11104, General Code, and the court did not set aside the transfer in that case on the ground of fraud but on the ground that the transfer created a preference in favor of the grantee, a creditor of the grantor, to the exclusion of other creditors. The court found from the evidence that the grantor and grantee had common knowledge of the intent to create a preference in contemplation of insolvency. The case is clearly distinguished from that under consideration here.

In *Friedel, Admx.,* v. *Wolfle, supra,* the court considered the sufficiency of the petition as against attack by demurrer. The court laid down the rule at page 568

that in order to set aside a conveyance at the suit of a "'subsequent creditor,' * * * there must be alleged and proved an intention to avoid or evade the liability for an act committed, which afterwards is rendered into a judgment, and that the party must either transfer it *without any consideration* or the *party-grantee must participate in the intended wrong.*" (Italics ours.) That case is likewise distinguished from this.

In *Huwe* v. *Knecht, supra,* the court held in the first paragraph of the syllabus:

"1. A conveyance of real estate by a husband to his wife *as a gift* will be set aside as having been made in fraud of creditors where it is disclosed that the husband has not sufficient assets to permit him to make a gift but is unable to pay his debts." (Italics ours.)

In the second paragraph of the syllabus it is held that such a transfer "is constructively fraudulent and void, even though no actual fraud was intended." Although there was a claim of consideration for the transfer in that case, the court held the amount of consideration so entirely disproportionate to the value of the property as to be altogether unreasonable and the court assumed a fraud had been committed. We find otherwise from the evidence in the case here under review.

*Ursak* v. *Sivanick, supra,* was an action under Section 8618, General Code, to set aside a *voluntary conveyance* of realty by debtors to their son, wherein the court held it was not necessary to prove fraudulent intent or knowledge on the part of the grantee. A voluntary conveyance is one not supported by a valuable consideration. 19 Ohio Jurisprudence, 757, Section 81. That court held the alleged consideration no consideration at all, for the reasons stated in the opinion. That case is likewise distinguishable from this.

It may be here observed that a conveyance which is presumptively fraudulent only, may nevertheless be shown to be made in good faith and for valuable con-

sideration, or it may be shown that no fraud has in fact been perpetrated, and thereby the conveyance may be rendered immune from cancellation on the ground of fraud.

"In Ohio, the prevailing rule that voluntary conveyances are *prima facie* or presumptively fraudulent rather than conclusively fraudulent as to existing creditors is in force." 19 Ohio Jurisprudence, 757, Section 81.

*Jamison* v. *McNally, supra,* was an action involving questions between creditors under a former "act regulating the mode of administering assignments in trust for the benefit of creditors." The case is of little benefit in disposing of the questions here involved. It may be said that it would be impossible to reconcile all the observations made by the various courts in reviewing actions to set aside conveyances, such observations usually having foundation in the particular facts shown by the evidence.

*Mitchell* v. *Gazzam, supra,* involved an assignment of property from a debtor, made with the unquestioned purpose and design of securing a preference to some creditors over others.

The question involved in *Rogers* v. *Marchant, supra,* is indicated by the language of the first paragraph of the syllabus:

"Generally, under statute such as that in South Carolina dealing with conveyances in fraud of creditors, fraudulent intent on the part of debtor is necessary to bring conveyance within terms of statute, but such intent will be inferred where conveyance is made under such circumstances that it will necessarily hinder and delay creditors, as where debtor makes voluntary conveyance of all his property."

That action involved a voluntary conveyance which necessarily hindered and delayed creditors. We can have no quarrel with the holding of the court in that case but it is distinguished from the evidence before us.

We fail to see anything in the case of *Cincinnati Equipment Co.* v. *Degnan, supra,* which is helpful to the decision of the case before us.

Without further reviewing the cases cited and relied upon by plaintiff, an examination thereof will disclose that all are distinguishable from the case here under consideration.

It is the conclusion of this court from the evidence before us that the principle announced in the case of *Stephenson* v. *Donahue,* 40 Ohio St., 184, is applicable here. The syllabus is as follows:

"1. A voluntary conveyance to a trustee for the benefit of the grantor's wife and children is not fraudulent against a creditor whose claim was at the time amply secured by mortgage.

"2. The fact that the mortgage security is subsequently lost by the creditor's laches, does not make such a conveyance fraudulent."

The evidence in the case before us clearly indicates that the plaintiff at all times before the transfer in question was thoroughly satisfied with the security for its debt—so well satisfied that it did not seek or expect to look to the Fairgreen avenue property for the payment thereof, thus negativing any presumption of fraud on the part of either the grantor or grantee in this conveyance.

The situation shown by the evidence in this case is so nearly like that in the case of *Cahill* v. *Chaney,* 15 Ohio Law Abs., 190, that we deem it proper to repeat in part what Judge Ross said at page 191:

"It is difficult for us to clearly grasp the theory upon which this action is predicated, but as nearly as we can analyze the claim of the plaintiff it is that although the plaintiff was satisfied with her security, the Chaneys were bound to hold any other property they possessed as a further security for the plaintiff in the event that the property she had conveyed to them should develop as an inadequate security."

The decree in the cited case was for defendants.

The case of *Carruthers* v. *Kennedy,* 121 Ohio St., 8, 166 N. E., 801, is cited, that being a case certified to the Supreme Court by the Court of Appeals of this district on the ground of conflict with the case of *Prose* v. *Beardsley, supra,* of which the Supreme Court, after finding no conflict, says that "the syllabus of that case does not seem to be borne out by the opinion."

It is our conclusion that the evidence before us does not warrant a finding that the plaintiff has been defrauded, but in fact negatives that claim. Plaintiff has now absolute title to real estate formerly owned by Mrs. Weaver which under ordinary market conditions appears to have greater value than the debt owing to plaintiff. It was not any act of the grantor or of the grantee in this conveyance which gives rise to a seeming loss to plaintiff, but merely the failure of both the creditor and debtor to properly evaluate conditions which resulted in the sale of the property in the foreclosure action at such price as brought about the deficiency judgment which is the basis of plaintiff's claimed damages. From the evidence it is our opinion that the greater loss fell upon the debtor, and particularly in view of the fact that plaintiff, during a long period preceding its purchase of the property at foreclosure sale, was charging interest on the loan at seven per cent per annum when, as a matter of common knowledge, the same conditions which enabled plaintiff to buy in this property for two-thirds its appraised value had brought about a much lower prevailing rate of interest on bank loans, many banks having voluntarily reduced the rate of interest called for in notes held by them.

In support of our conclusions we cite: *Second National Bank* v. *Bursley,* 18 Ohio Law Abs., 388; and *Pfisterer* v. *Toledo, B. G. & S. Traction Co.,* 89 Ohio St., 172, 106 N. E., 18.

The finding and decree of the court for defendants

having been announced, plaintiff has subsequently filed an application for rehearing and in the alternative asks certification on the ground of conflict with the case of *Squire, Supt. of Banks,* v. *Cramer,* 64 Ohio App., 169, 28 N. E. (2d), 516. The application for rehearing is denied. The facts in the case before us are so at variance with those in the case referred to that we do not feel justified in certifying this case to the Supreme Court on the ground of conflict therewith, and such application is denied.

*Decree for appellees.*

CARTER and PHILLIPS, JJ., concur.