HORNBECK, P. J., concurs in the judgment of affirmance.

SQUIRE, SUPT. OF BANKS, APPELLANT, *v.* CRAMER ET AL., APPELLEES.

(Decided January 10, 1940.)

*Mr. Eugene S. Lindemann,* for appellant.
*Messrs. Payer, Corrigan, Bleiweiss & Cook,* for appellees.

Ross, J. This is an appeal on questions of law and

fact from the Court of Common Pleas of Cuyahoga county, Ohio.

The plaintiff, appellant herein, Superintendent of Banks of the state of Ohio, as conservator of The Union Trust Company, instituted the action under consideration, in the Court of Common Pleas of Cuyahoga county, seeking thereby to set aside a conveyance of real estate from Catherine and Oscar Cramer to their daughter, Margaret C. Cramer, one of the defendants, appellees herein.

The Superintendent of Banks claims that such conveyance was made in fraud of the creditors of the grantor, Catherine Cramer, in that such conveyance rendered the grantor, Catherine Cramer, wholly insolvent, and relief against such constructive fraud is sought by virtue of the provisions of Section 8618, General Code. This section provides:

"Every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons purchasing such lands, tenements, hereditaments, rents, goods or chattels, shall be utterly void and of no effect."

It appears from the record that sometime in the year 1927, Catherine Cramer took a trip to Europe; that just before she left, she executed a deed to her daughter, then unmarried and known as Margaret C. Cramer. This deed was given by the grantor to her husband, Oscar Cramer, a lawyer, with instructions to hold the same, and in the event of the death of the grantor, to deliver the same to their daughter. There was no delivery of the deed at this time. The property involved was the home of the grantor, her husband and daughter, Margaret.

There is evidence that the home was built with the

intent that the same should be ultimately the home and property of the daughter.

Returning safely from her trip, nothing was further done about the matter until after the year 1932, when the mother became afflicted with cancer, and was advised that she had only a short time to live. In November, 1932, she secured the deed from her husband, executed it, and delivered it to her daughter, Margaret. The grantee directed her father to do what was further necessary in the matter. Oscar Cramer held the executed deed in his possession until February 1, 1933, when he caused the deed to be recorded. Catherine Cramer died on February 3, 1933. At the time title passed from the mother, Catherine Cramer, to her daughter, Margaret C. Cramer, the only assets possessed by the mother were 648 shares of the common stock of The Union Trust Company. This stock had a par value of $25 per share, and a then market value of $11 per share. The deed was made in consideration of love and affection, and was entirely gratuitous in spite of the fact that there was a formality of passing ten dollars between mother and daughter. The grantor was rendered insolvent when title to the home passed to her daughter on November 23, 1932.

On July 30, 1934, the Superintendent of Banks having determined that the assets of The Union Trust Company were insufficient to pay the debts of the institution, assessed double liability against stockholders, by virtue of the appropriate constitutional provisions, then effective, and the statutes of Ohio enacted in conformity thereto, namely, Sections 710-75 and 710-95, General Code.

This section of the Constitution became inoperative by virtue of the amendment of the Constitution effective July 1, 1937. The original action in this case was filed by the Superintendent of Banks in March, 1937, shortly after the discovery of the transfer of title from the stockholder to her daughter.

The amendment to the Constitution cannot affect rights of the parties matured previous to the amendment.

This conclusion is predicated upon the principle that the obligation created by legislation creating superadded liability is contractual and not penal, or merely remedial in character.

It is apparent that the grantor in the instant case intended no actual fraud. This is admitted. If fraud existed it was constructive fraud, created by reason of the insolvency of the grantor resulting from the gratuitous conveyance of her property to her daughter. Obviously, if the grantor had received adequate consideration for the property conveyed, or had possessed other property, she could not have been considered insolvent, and the provisions of Section 8618, General Code, would have no application.

When a grantor conveys all her property, thereby rendering herself unable to satisfy existing obligations, although a nominal consideration is paid by the grantee, such conveyance will be held to be gratuitous as a matter of law, and to have been made in fraud of existing creditors, even though it is also apparent that no actual fraudulent intent was present in either the grantor or grantee. *Jamison, Assignee,* v. *McNally,* 21 Ohio St., 295; *Brinkerhoff, Trustee,* v. *Tracy, Admr.,* 55 Ohio St., 558, 45 N. E., 1100; *First National Bank of Chicago* v. *Trebein Co.,* 59 Ohio St., 316, 52 N. E., 834; *Stivens* v. *Summers,* 68 Ohio St., 421, 67 N. E., 884, 19 Ohio Jurisprudence, 752, Section 74 *et seq.;* 12 Ruling Case Law, 478, Section 11; *Huwe* v. *Knecht,* 10 Ohio App., 487; *Hause* v. *Coblentz,* 22 Ohio App., 17, 153 N. E., 255.

We apprehend that it is not seriously contended by the defendants that the conveyance in the instant case was other than gratuitous, or that the consideration was other than love and affection. The evidence in any event is conclusive on this point.

The determination by the Superintendent of Banks to assess superadded liability was not made effective until July 30, 1934. The conveyance passed title November 23, 1932. Was the contractual obligation inherent in the stock of the bank such a primary liability existing at the time of the gratuitous conveyance as to justify a court of equity in setting aside such conveyance, which rendered the stockholder insolvent after the passage of title?

The superadded liability of a stockholder in a bank is a primary contractual obligation. *Squire, Supt. of Banks,* v. *Standen, Gdn.,* 135 Ohio St., 1, 18 N. E. (2d), 608. At page 3 of the opinion, the court states:

"While this provision of the Constitution was self-executing and did not need legislation to make it effective, the General Assembly saw fit to include it substantially in Section 710-75, General Code. See *Squire, Supt. of Banks,* v. *Solinski,* 132 Ohio St., 180, 184, 5 N. E. (2d), 479, 481.

"This constitutional mandate had for its manifest purpose the strengthening of state banks with the public and the furnishing of an additional safeguard to the banks' depositors and creditors. It created a primary liability against all stockholders by operation of law. Through judicial pronouncement a contractual significance has been attached to such superadded liability, and it has been stated in substance that one acquiring stock in a bank accepted and assumed the responsibility of the added burden imposed by law, upon which those lending credit to the bank had a right to rely for protection. The engagement of the stockholder was initially with the corporation, but on a trust basis for the exclusive benefit of the corporate creditors. *Kulp* v. *Fleming,* 65 Ohio St., 321, 337, 62 N. E., 334, 337, 87 Am. St. Rep., 611, 614; *Andrews* v. *State, ex rel. Blair, Supt. of Banks,* 124 Ohio St., 348, 178 N. E., 581, 83 A. L. R., 141; *State, ex rel. Fulton, Supt. of Banks,* v. *Bremer, Admx.,* 130 Ohio St., 227,

234, 198 N. E., 874, 877; *Smathers* v. *Western Carolina Bank,* 135 N. C., 410, 47 S. E., 893.''

The gratuitous conveyance, therefore, was made at the time this primary liability existed. But it is asserted by the defendants, and there is evidence to support the assertion, that at the time of the conveyance the bank was at least in apparently sound condition, that is, it was advertising for deposits, and that in the following January, 1933, it even declared a dividend. In other words, although it must be admitted that there was a primary liability at such time, it is apparent that such liability had not matured and did not mature until the Superintendent of Banks took possession of the assets of the bank.

We are here now confronted with this definite question:

If the gratuitous transfer is made by the stockholder prior to assessment of added liability by the Superintendent of Banks, even though a primary obligation resides in the stockholder, can the Superintendent of Banks claim fraud as against the obligees of such liability, which admittedly did not mature until the superintendent took possession of the assets of the bank, and when the record is silent as to the insolvency of the bank at the time of the transfer?

Is the holder of an unmatured obligation a creditor within the purview of Section 8618, General Code?

Certainly, no cause of action arose in favor of anyone until the Superintendent of Banks took possession of the bank. The right of the superintendent to assess may be exercised by the superintendent at his discretion. He is not obliged to assess, but the last sentence of Section 710-75, General Code, provides:

''At any time after taking possession of a bank for the purpose of liquidation when the Superintendent of Banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of the stockholders.''

A cause of action, therefore, exists in view of this enactment "at any time after taking possession of a bank." Who is the defrauded creditor prior to this event? Certainly, not the Superintendent of Banks. However, from the authorities hereinbefore cited it would seem that the creditors of the bank are creditors of the stockholder, and that the superintendent is merely enforcing an obligation to them and for their benefit. In *State, ex rel. Fulton, Supt. of Banks*, v. *Bremer, Admx.*, 130 Ohio St., 227, 198 N. E., 874, the first and second paragraphs of the syllabus are:

"1. The state of Ohio, while a nominal party in an action brought by the Superintendent of Banks against the stockholders of a bank to enforce the superadded liability imposed by Section 3 of Article XIII of the Constitution of Ohio, has no proprietary or pecuniary interest in the result of the action, and in such action is not suing in its sovereign capacity.

"2. Such an action is for the benefit of the creditors of the bank and not for the benefit of the state of Ohio, and the Superintendent of Banks is barred by any statute of limitations that would have barred the creditor had he instituted the action."

The plaintiff, Superintendent of Banks, insists that regardless of the fact that the obligation of the stockholder, grantor, was unmatured at the time of the gratuitous transfer, yet such transfer was in fraud of the creditors of the bank. No direct Ohio authority sustains such position. The most direct statement in favor of this position is found in the case of *Peterson, Recr.*, v. *Wahlquist*, 125 Neb., 247, 249 N. W., 678, 89 A. L. R., 747. The sixth paragraph of the syllabus of this case reads as follows:

"6. The contingent liability of a bank stockholder for the amount of his stock, when imposed by the Constitution and his subscription contract, makes deposi-

tors existing creditors, within the meaning of the rule that a voluntary conveyance of all his property to his wife, without consideration, is fraudulent as to them.''

The court in the opinion cites with approval the language of 12 Ruling Case Law, 492, Section 25:

''Whoever has a claim or demand on a contract in existence at the time when a fraudulent conveyance is made is a creditor within the meaning of the statute, and the holder of a contingent claim is as fully protected by the statute as one that is absolute. Consequently liability as surety is as clearly within the statute as liability as principal. In cases of contingent liability, the liability, whenever happening, relates back to the date when it was originally incurred.''

To the same effect is *Williams* v. *Travis*, 277 F., 134.

It is our conclusion, therefore, following the weight of authority, that judgment should be entered in favor of the plaintiff, appellant herein, and a decree granting the relief prayed for may be entered.

*Judgment for appellant.*

HAMILTON, P. J., and MATTHEWS, J., concur.

HAMILTON, P. J., MATTHEWS and Ross, JJ., of the First Appellate District, sitting by designation in the Eighth Appellate District.