Charlie Delia, Transferee v. Commissioner.
Delia v. Commissioner
Docket No. 1149-63.
United States Tax Court
T.C. Memo 1964-329; 1964 Tax Ct. Memo LEXIS 8; 23 T.C.M. (CCH) 2018; T.C.M. (RIA) 64329; December 23, 1964
Martin J. Welsh, Leader Bldg., Cleveland, Ohio, for the petitioner. John P. Graham, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent has asserted that petitioner is a transferee of Lath Rite Builders, Inc., based on the following deficiencies and additions to tax assessed against Lath Rite: Year
Deficiencies
Addition to tax
under Sec. 6651(a),
I.R.C., 1954
1954
$1,918.90
$479.73
1955
3,864.39
966.10
*9 We must decide (1) whether Lath Rite Builders, Inc., is liable for the deficiencies and penalties assessed and, if so, (2) whether petitioner is liable as a transferee. Findings of Fact Some of the facts were stipulated and are hereby found accordingly. On August 21, 1950, Charlie Delia (herein called petitioner) and Albert Azolino organized Lath Rite Builders, Inc., under the laws of the State of Ohio. The corporation operated a construction business. Its stock was owned equally by petitioner and Azolino. Both worked for the firm, petitioner supervising the construction and handling complaint work while Azolino ran the office and handled the corporation's finances. Throughout 1951, 1952, and 1953, the corporation operated under the joint control of the petitioner and Azolino. They received the following salaries: Year
Petitioner
Azolino
Total
1951
$ 9,440
$ 9,440
$18,800
1952
12,550
12,550
25,100
1953
11,275
11,275
22,500
Early in 1954 Azolino complained of ill health and announced that he was moving to Florida. Before leaving he made arrangements with the corporation's bank to accept his signature on checks when signed by the corporation's *10 bookkeeper, Ruth Kessler, who did sign his name to checks after his departure. Petitioner managed the corporation alone during 1954 and 1955. In addition to his former duties, he ran the office, completed escrow instructions and made other necessary financial arrangements. Between 30 and 35 homes were under construction at the time Azolino left. Lath Rite owed subcontractors $100,000 on these partially completed homes. Petitioner personally guaranteed this amount plus additional sums necessary to complete the work. With these assurances the subcontractors finished the jobs. No new homes were begun by the corporation after Azolino's departure. The houses already under construction were completed and sold during the remainder of 1954 and 1955. The corporation ceased operations in the latter part of 1955. Its Articles of Incorporation were cancelled by the Ohio Secretary of State on October 15, 1959, for failure to pay corporate franchise taxes. The books of the corporation were based on a system which aggregated the costs for each house constructed and matched them against the sales price received to determine the profit on each unit sold. Each home was given a number to identify *11 it and the lot upon which it stood. Then a separate file was set up to hold the bills and invoices related to that house. When the house was sold and payment received, construction costs were paid from the receipts of sale. The books and records were kept by Ruth Kessler under the supervision of Sanford Fein, a certified public accountant retained for the corporation by Azolino in 1951. Fein reviewed Kessler's work regularly and made any necessary corrections. He closed the corporation's books each year and prepared its financial statements and income tax returns. Early in 1955 petitioner discharged Fein before the 1954 return was filed. Fein informed petitioner that no return had been filed. From that time on, adequate books and records were not kept of Lath Rite's activities. On January 23, 1956, respondent's agents notified petitioner that the 1954 return for Lath Rite had not been filed and that the 1955 return would be due shortly thereafter. In the fall of 1957 Fein was recalled by petitioner to assist in the examination of the corporate records then being conducted by respondent's agents. He drew up a corporate balance sheet as of September 30, 1956, which contained the *12 following items: Assets
Cash
$ 5.49
Accounts receivable
Charles Delia
Corporate receivables transferred to personal account
7,972.37
Other amounts owed
8,436.74
Albert Azolino
2,376.06
Lath Rite Building Co. (partnership of petitioner and
Azolino)
33,558.94
Other
325.73
Mortgage receivable
2,000.00
Organization expense
125.00
$54,800.33
Liabilities and Net Worth
Miscellaneous accounts payable
831.90
Notes payable - Delia [1] and Azolino
8,800.00
Transfers payable
4,218.31
Capital stock
5,000.00
Earned surplus - 1/1/54
16,672.49
Less estimated liability for penalties and interest on 1954
and 1955 income
(2,500.00)
$54,800.33
Petitioner collected and transferred the $2,000 mortgage receivable to his personal use in February 1956. On August 1, 1956, the accounts receivable were uncollectible. Lath Rite Builders, Inc., failed to file corporate income tax returns for the taxable years 1954 and 1955. Upon completing the investigation respondent determined the following taxable income for the years in issue, using the balance sheet totals developed by Fein: *13 1954
1955
Sales
$193,439.45
$112,031.10
Miscellaneous income
429.78
401.96
Gross income
193,869.23
112,433.06
Less: Cost of goods sold
158,680.32
86,581.99
Adjusted gross income
35,188.91
25,851.07
Administrative and sell-
ing expenses
28,792.58
12,969.77
Net income
$ 6,396.33
$ 12,881.30
On January 4, 1955, petitioner allegedly received a $15,000 promissory note from Lath Rite. The note bears the notation, "This note represents salary for the year 1954 due Charlie Delia." The note was signed by Ruth Kessler for Azolino and by petitioner. Ruth Kessler had no authority to sign such promissory notes. No evidence was presented to show that she had ever done so before. No proof of corporate debt was offered concerning 1955, although petitioner claims that the corporation owes him $7,500 in salary for that year. Respondent allowed Lath Rite no deduction for salaries to petitioner for 1954 and 1955. There are no entries in the corporate books and records for either of those years indicating that petitioner received any compensation. Sanford Fein had no knowledge of the $15,000 note, although it was dated during the period in which Fein was *14 employed as Lath Rite's accountant. The revenue agent who investigated the corporate books did not discover the note. During the course of his investigation he asked petitioner what salary deduction should be allowed for 1954 and 1955 and the petitioner told him to allow no deduction for salary. Petitioner did not include any amounts as salary in his Federal income tax returns for 1954 and 1955. On August 6, 1956, petitioner endorsed a $1,291.67 check payable to the corporation and deposited the sum in his personal bank account. Nine days later he transferred another check for $6,680.70, payable to Lath Rite, to himself in the same manner. No part of the $7,972.37 received by the petitioner was reported by him as income in his tax return for 1956. On August 6, 1958, a notice of deficiency was mailed to the corporation covering 1954 and 1955 income taxes. On December 12, 1958, the deficiencies and penalties set out above were assessed. Notice and demand for payment were made upon the corporation that same day. All reasonable attempts to collect this amount from the corporation have been made by respondent. The assessment remains unpaid. Lath Rite was insolvent at the time of the *15 transfers to petitioner in August 1956. The corporation earned the net income shown above in 1954 and 1955. Petitioner received no compensation for his services during 1954 and 1955. The transfer to himself of corporate assets totaling $7,972.37 was made without adequate consideration. Petitioner has not established that Lath Rite's failure to file 1954 and 1955 tax returns was due to reasonable cause and not to willful neglect. Opinion The respondent asserts that petitioner is liable as a transferee under section 6901 of the Internal Revenue Code of 1954. [1] Petitioner first argues that he is not liable as a transferee because the corporation itself is not primarily liable for the income taxes and penalties previously assessed. Alternatively, he contends that the receipt by him of corporate assets cancelled antecedent debts owed to him by the corporation so that the transfers cannot be reached by other creditors. *16 Footnotes
1. $4,400 if this sum is due petitioner for 1951 and 1952 salaries.↩
1. SEC. 6901. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) Income, Estate, and Gift Taxes. - (A) Transferees. - The liability, at law or in equity, of a transferee of property - (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes). * * *
It is certainly true that petitioner cannot be held liable if Lath Rite is not liable. Archibald Sherrod, 16 B.T.A. 622 (1929). Petitioner questions only whether respondent properly refused to allow the corporation any salary deductions in 1954 and 1955 for the services performed by him. Petitioner points to the salaries paid to him in 1951, 1952, and 1953 as evidence of a corporate plan of compensation which was continued in 1954 by the $15,000 note and the $7,500 which he feels he is entitled to for 1955. The record here does not support petitioner's claim with respect to the note. The corporate accountant never knew about it even though it was supposedly drawn during the time when he still had charge of the books and records. The corporate books and records contain no entries concerning this note, although they do accurately show the earlier transactions where salaries due were represented by notes payable to petitioner and Azolino. The examining agent for respondent failed to discover the note during his examination. Petitioner informed the agent at that time that he received no salaries for 1954 and 1955. Petitioner testified that he viewed the transfers of corporate property to his personal use in 1956 as partial payment of past salaries due him. Yet his income tax return for that year shows no salary income received from Lath Rite. We do not question the fact that petitioner performed services for the corporation during the years involved. The evidence presented shows business activities conducted during these years for which compensation would ordinarily be paid. However, the performance of valuable services is not enough. Compensation must be shown to have been intended by the recipient of the services. Ralph Romine, 25 T.C. 859 (1956). On these facts we conclude that the corporation did not intend to pay petitioner. We find that the $15,000 note is invalid. Consequently, petitioner received no salary for 1954 and 1955. Since Lath Rite, the transferor, is liable for the deficiencies assessed against it, section 6901 makes the petitioner liable for these sums to the extent he received corporate assets as a transferee. Whether petitioner is a transferee is a matter of State law. Commissioner v. Stern, 357 U.S. 39 (1957). We must look to the law of Ohio to determine whether, under these facts, corporate creditors would have a right of action against petitioner. Petitioner's contention in this regard is that he is not a transferee because the money he received was for the payment of an antecedent debt, which constituted adequate consideration. We have found that petitioner received no salaries for 1954 and 1955. This means that only the $4,400 note representing wages due in 1951 and 1952 can qualify as an antecedent debt. The difference between that sum and the assets transferred to petitioner is $3,572.37. As to this amount there was no adequate consideration. Petitioner has transferred to himself corporate funds without adequate consideration at a time when the corporation was insolvent. Such a transfer is a fraud upon creditors under Ohio law and is subject to a suit by them for return of the assets. Brice v. Myers, 5 Ohio 121 (1821); Crumbaugh v. Kugler, 2 Ohio St. 373 (1853); Squire v. Cramer, 64 Ohio App. 169, 28 N.E. 2d 516 (1940). The remaining $4,400 received by petitioner does cancel a valid antecedent indebtedness of the corporation. But even though it was made for valid consideration, it nevertheless constitutes at least a preference. Section 1313.56 of the Ohio Revised Code provides, in part, that "a sale, conveyance, transfer, mortgage, or assignment, made in trust or otherwise by a debtor, and every judgment suffered by him against himself, in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, * * * is void as to creditors of such debtor at the suit of any creditor. * * *" Ohio Rev. Code Ann. § 1313.56 (Page, 1962). The facts show that petitioner managed and controlled the corporation when these transfers were made. He knew the extent of its assets and liabilities. With the knowledge that the corporation was then under investigation by respondent, he transferred the remaining corporate assets to himself. We conclude that he did so to prefer himself over other creditors, particularly the respondent. In Rouse v. Merchants National Bank, 46 Ohio St. 493, 22 N.E. 293 (1889), the Supreme Court of Ohio held that when a corporation becomes insolvent and ceases to do business, it cannot create valid preferences by securing antecedent debts with mortgages. Here assets instead of mortgages were given for the antecedent debts, which presents an even stronger case. See also C. R. Remington & Son v. Central Press Assn. Co., 3 Ohio N.P. 258 (1896). It is clear that petitioner's transfer was a preference and is void as to other creditors. Section 1313.56, Ohio Revised Code, also provides that a transfer made "with intent to hinder, delay, or defraud creditors, is void as to creditors of such debtor at the suit of any creditor." Under this provision of Ohio law the petitioner's transfer is constructively fraudulent because, if one acts in such a way as to hinder and delay his creditors, the law will assume that his intent corresponds with his actions. Brinkerhoff v. Tracy, 55 Ohio St. 558, 45 N.E. 1100 (1897). Accordingly, we hold that the petitioner is liable as a transferee to the extent of the assets he transferred from the corporation to himself in August 1956. Since the petitioner has not shown that Lath Rite's failure to file its corporate income tax returns for 1954 and 1955 was due to reasonable cause and not to willful neglect, the negligence penalty prescribed by section 6651(a) of the 1954 code is sustained. Decision will be entered under Rule 50. ↩