In the Matter of John A. HALL, Debtor.

Diane L. JENSEN, as Trustee in Bankruptcy, Plaintiff,

v.

Elizabeth Ann HALL, individually and as Trustee of that certain Trust created by John A. Hall and Elizabeth Ann Hall dated October 27, 1976 as subsequently amended, Defendant.

Bankruptcy No. 81–1356.
Adv. No. 81–0465.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Sept. 9, 1982.

G. Gordon Harrison, Fort Myers, Fla., for plaintiff.

Alfred E. Johnson, N. Fort Myers, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is an attack by the Trustee of the estate on certain transfers by the Debtor which, according to the Trustee, are fraudulent, thus void.

The complaint sets forth two claims for relief. In Count I, the Trustee seeks to have conveyances of real and personal property from the Debtor to the Defendant held fraudulent or voidable under Ohio law. In Count II, the Trustee seeks a temporary injunction enjoining the Defendant from transferring, conveying or using any of the assets of the Trust pending a final determination of the validity of the claims for relief. The issues raised by Count II were resolved by a stipulation entered into by the parties which was approved by the Court.

The facts material to the resolution of the remaining controversy as appear from the record and established at the trial, can be summarized as follows:

At the time pertinent to the matter under consideration, the Debtor, John A. Hall, resided in Ohio. For approximately 24

years, he was engaged in the construction business, via a business operated by him as the chief executive, John A. Hall Construction Company (the Company), a corporation wholly owned by him, together with its subsidiary JS & J Construction Company (JS & J). The majority of the business of the two corporations was construction of public works projects. By mid 1976, the Company had negligible work and by August, 1978 had completely ceased operating.

On October 27, 1976, the Debtor and Elizabeth Ann Hall, his wife, as settlors, executed a Trust Agreement, naming Elizabeth Ann Hall as Trustee and the Debtor and his wife as primary beneficiaries of the Trust. The Trust Agreement (Plf's Exh. 1) provides, in pertinent part, that the Trustee shall pay all of the net income of the trust estate to the Debtor and his wife or in the event one dies, to the surviving spouse. In addition, the Trustee, in her sole discretion, may pay to the beneficiaries such amounts from the principal of the trust estate as the Trustee deems necessary or adviseable for their care, maintenance, support, use or benefit.

After the death of the surviving beneficiary, the Trust is to be divided into separate trusts, one for each child of the Grantors, or his descendants. The Trust is a typical spendthrift trust, providing that none of the interest of any beneficiary can be transferred, assigned, pledged or encumbered; nor is it subject to any claim of the creditors of the beneficiary or liable to attachment or execution.

Paragraph 14 of the original Trust Agreement reserved to the Grantors the power to modify, amend or revoke the Agreement or the trust; however on November 9, 1976, the Debtor and Mrs. Hall executed an Amendment to Trust Agreement, which deleted Paragraph 14 and substituted a paragraph providing that the Trust Agreement is irrevocable and the Grantors retain no power to modify, amend or revoke the Agreement or the trust.

On November 12, 1976, the Debtor and Mrs. Hall executed a quit-claim deed, conveying three parcels of real property to the Trustee. (The three parcels had been held in the Debtor's name, individually, but Mrs. Hall joined in the deed, as required by Ohio law, to relinquish her dower claim.) Also on that date, the Debtor and Mrs. Hall conveyed by Bill of Sale all "household goods, furniture, linens, china, silverware, radios, televisions, household appliances and all other personal property" owned by them and located at their residence in Bryan, Ohio (Plf's Exh. 1, item 6). The trust was further funded on December 13, 1976 when the Debtor transferred 157 antiques to the Trustee through a Bill of Sale (Plf's Exh. 1, item 4). There is no question that the Debtor did not receive any consideration for the transfer.

Sometime in 1978, the Halls moved to Florida and on July 31, 1981 the Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code.

The Plaintiff brought this action under § 544(b) of the Bankruptcy Code, which provides that the Trustee in Bankruptcy may avoid any transfer of an interest of the Debtor in property that is voidable under applicable nonbankruptcy law by a creditor holding an allowable unsecured claim. In order to prevail under this section, the Trustee must establish first that, at the time the transaction under attack occurred, there was a creditor in fact in existence who was holding an unsecured claim which would be allowable under § 502 of the Code. Second, the Trustee must establish that the transaction could have been avoided by such creditor under the applicable local law, in the present instance, under the laws of the State of Ohio. There is no dispute that there were in fact several unsecured creditors who held an unsecured claim against the Debtor allowable under the Code. This leaves for consideration whether the transfer of the properties by the Debtor into the Trust was voidable under the laws of the State of Ohio. The Plaintiff contends that the conveyances to the Trust are void under either § 1335.01 or § 1336.04 of the Ohio Revised Code. The Defendant denies that the Trust is void for any reason.

Section 1335.01 of the Ohio Revised Code provides:

(A) *All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person making the same are void,* but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend, or revoke such trust, and such trust is valid as to all persons, except that any beneficial interest reserved to such creator may be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, the court, at the suit of any creditor of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same. (emphasis supplied)

The Plaintiff maintains that since the Trustee of the Hall Trust potentially can pay to the Debtor the entire corpus of the Trust, principal as well as income, the Trust is void by virtue of the first clause of § 1335.01. However, the Trust is not for the *exclusive* benefit of the Debtor, but is also for the benefit of Elizabeth Hall, the Debtor's wife, and for the benefit of the Debtor's three children. As stated in G. Bogert, *Trusts & Trustees,* § 223 (2d rev. ed. 1979), "If the settlor creates a trust for the settlor for life, with a restraint on voluntary or involuntary alienation of this interest, and with a remainder in others at his death, his creditors can reach his life interest, but not the remainder."

■■■ However, the statute also provides that "any beneficial interest reserved to such creator may be reached by the creditors of such creator ..." It is uniformly held that when a spendthrift trust is created in which part or all of the beneficial interest is reserved in the creator of the trust, the restraint is invalid and the creditors of the creator may reach his interest. Ohio law also recognizes the general validity of spendthrift trusts but draws the line in those situations where the beneficiary is

also the settlor; the settlor's creditors, existing and subsequent, can reach his interests and in Ohio, it is apparently immaterial that he had no intent to defraud his creditors. *See,* 49 Ohio Jur.2d, *Spendthrifts,* § 8. The fact that the creator's interest is subject to the trustee's discretion does not affect this result. So, if the Trustee has absolute discretion to convey the fee or absolute interest to the creator of the trust, creditors of the creator can reach the *entire* interest. See, Griswold, *Spendthrift Trusts Created in Whole or in Part for the Benefit of the Settlor,* 44 Harv.L.Rev. 203 (1930). The Restatement (Second) of Trusts § 156 incorporates this principle wherein it provides:

(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.

Since the Trustee has the power to pay the trust income to the Debtor, and to invade the principal and pay it to the Debtor, then the creditors, present or future, have the right to reach the trust assets.

Even without the Ohio statute or the common law, the Plaintiff is entitled to prevail under Ohio Rev. Code, § 1336.04. That section provides that:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

It should be noted that the statute specifically states that the debtor's actual intent is irrelevant. It cannot be seriously disputed that the Halls made the conveyances to the Trust without consideration. The only issue is whether the conveyances rendered the Debtor insolvent. Insolvency is defined by Ohio Rev. Code, § 1336.02 as that condition in which the fair value of the debtor's assets is less than the amount required to pay his "probable liability on his existing

debts as they become absolute and matured."

From the evidence presented, the Court is satisfied that the conveyances rendered the Debtor insolvent. The Halls' financial statement dated January 31, 1976 reveals that their assets, excluding their interest in the Construction Company, amounted to approximately $300,000. Of that amount, $15,000 constitutes a note from Tolsteel Corp. and $1,000 represents equity in Abearco Enterprises, Inc., both of which the Debtor admits are worthless. Most of the remaining assets, in particular the Halls' real property, household goods and personal property, were transferred to the Trust.

As to the value of the Debtor's interest in the Company, according to the Halls' 1976 financial statement, $11,000 represents accrued bonuses allegedly due from the Company and from JS & J; $17,000 constitutes debenture notes from the Company and $579,838 supposedly represents the Debtor's equity in the Company. However, the fact of the matter is that the Halls' equity actually was worth far less than the Defendant contends. By the Debtor's admission, the Company had negligible work in late 1976, when the Trust was created, and was, in fact, engaged only in "touch-up work" on the Company's last projects (Plf's Exh. 1, item 11). The large number of claims which the Company purportedly had against various entities turned out to be minimal. The Company's 1976 Corporate Income Tax Return reveals that the Company suffered heavy losses that year, and reported a total deficit of $315,443. The Balance Sheet for the Company as of January 31, 1976 reports assets of $2,095,190, of which some $1,322,500 consisted of "construction accounts and retainages". The "construction accounts" were actually almost worthless. Equipment, property, materials and supplies were valued at less than $30,000. On the other hand, the balance sheet reported $1,486,700 in total current liabilities. The Dun and Bradstreet Report on the Company, dated November 28, 1977 stated, "The latest fiscal financial statement of January 31, 1977, obtained in outside quarters, reflects an unbalanced financial condition with debt far in excess of net worth." Clearly the Debtor's interest in the Company did not have a value of over one-half of a million dollars.

On the other side of the Debtor's balance sheet is a significant amount of liabilities. The Halls' January 1976 Financial Statement reported a $30,800 mortgage on their personal residence, although when the residence was transferred to the Trust, it was transferred subject to the mortgage. The Statement also reports a note payable to Toledo Trust Company of $300,000; and an advance from JS & J of $125,250.

In addition to these liabilities, at the time that the Trust was created, there was in existence and unpaid a demand note in the amount of $400,000 to Toledo Trust Company from the Company and the Debtor individually, and the Debtor was also co-signor or guarantor of a $100,000 obligation to Toledo Trust. On June 30, 1981, judgment for $500,000 based on these notes, plus interest of $152,000 was entered against the Debtor and in favor of Toledo Trust in the Circuit Court in and for Lee County, Florida. Because the Company constructed public projects, it was required to obtain performance bonds, and the Debtor was the indemnitor under a general indemnity agreement executed in 1960 with United States Fidelity & Guaranty Company. USF & G eventually paid approximately $500,000 on various claims made against the construction bonds arising from the Company's last projects. Although these claims were contingent rather than matured at the time that Trust was created, under Ohio law, the liability relates back to the date it was originally incurred. *Squire v. Cramer,* 17 Ohio Op. 499 at 502, 64 Ohio App. 169, 28 N.E.2d 516 (1940).

The Court is satisfied from the evidence produced that the Debtor did not retain sufficient assets to pay his debts as they matured, and therefore, the conveyances to the Trust were fraudulent as to creditors under Ohio Rev. Code § 1336.04. Since the transfer is voidable under Ohio law by Toledo Trust or USF & G, the Plaintiff as

**946**

Trustee in Bankruptcy may avoid the transfer under § 544(b) of the Bankruptcy Code.

A separate final judgment will be entered in accordance with the foregoing.